*Reversed and remanded, with directions.*

---

(No. 13666.—Reversed and remanded.)
GERALDINE DUSTIN *et al.* Appellants, *vs.* MARGARET HELEN CULL BROWN *et al.* Appellees.

*Opinion filed April 21, 1921.*

1. WILLS—*when reference to former devise does not cut down fee to a life estate.* A devise in fee of an undivided one-half interest in a certain tract of land to the testator's daughter is not cut down to a life estate by a provision that she is "to have and to hold the same upon the same térms and conditions as the other lands willed to my son and daughter," where the only other devises in the will give a fee to the son and daughter in one tract and a life estate to the daughter in another tract. (*Spatz* v. *Paulus,* 285 Ill. 82, followed.)

2. SAME—*a remainder "after the death" of a life tenant is not necessarily contingent.* A remainder "after the death" of a life tenant is not contingent until the termination of the life estate unless the context of the will indicates such intention, as the expression "after the death" is ordinarily construed as referring to the time when the estate will vest in possession. (*Bates* v. *Gillett,* 132 Ill. 287, distinguished.)

3. SAME—*construction of a devise to daughter "and after her death to her children and their descendants forever."* A devise to the testator's daughter for life "and after her death to her children and their descendants forever" gives a life estate to the daughter with a remainder in fee which will vest in the first child of the life tenant, subject to being opened up to let in the shares of afterborn children.

4. SAME—*an estate will vest at death of testator if contrary intention is not expressed.* An estate granted under a will will be deemed to vest upon the death of the testator unless very clear words are found in the will showing an intention that the estate shall not vest except upon the happening of a future contingency.

5. SAME—*the possibility of issue is extinguished only by death.* The law recognizes the possibility of birth of issue in all adult women, and the single fact that terminates the possibility of issue is death.

6. SAME—*interest which is subject to be cut down upon birth of issue cannot be set off by partition.* Partition of an estate in remainder subject to a life estate cannot be had at the instance of one remainder-man, where the members of the class in which the remainder is vested cannot be ascertained until the death of the life tenant, so as to set off their shares in severalty.

7. EQUITY—*complainant who is charged with laches must show due diligence.* Where a complainant in his bill seeks the enforcement of a stale claim without presenting facts to excuse the delay and the defendants in their answer charge *laches,* the complainant should amend his bill and allege the facts, if any, upon which he relies to excuse his delay.

8. SAME—*when judgment creditors are not entitled to reformation of sheriff's deed.* Judgment creditors who take no action to correct a mistake in their sheriff's deed for nearly twenty years are not entitled to have the deed reformed upon setting up the alleged mistake by cross-bill in a partition suit, where they make no offer to amend their cross-bill by alleging an excuse for the delay after an answer is filed charging *laches,* as they must be held to have had knowledge of the alleged mistake at the time the deed was made, in the absence of any allegation on the subject.

9. JUDGMENTS AND DECREES—*when an order reviving judgment against one co-defendant, alone, is binding.* An order reviving a judgment against only one co-defendant, who enters his appearance in the *scire facias* proceeding and consents to immediate judgment of revival, is binding upon him and those in privity with him.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

COVEY & WOODS, for appellants.

DAILEY, MILLER, MCCORMICK & RADLIFF, and MCCORMICK & MURPHY, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a partition suit brought by appellants against appellees, seeking partition of certain lands in Logan county and for other relief. By clause 2 of the will of Dorrel F. Wright he devised to his daughter, Mary E. Wright, (now Dustin,) a life interest in an undivided one-half of a tract of land containing 1100 acres and referred to as the home farm, under the following condition: "and after her death to her children and their descendants forever." By the fourth clause of the will Mary was devised an undivided one-half in another tract in fee. The other undivided one-half in these lands was by will devised to her brother, Frank. By the second clause of a codicil to the will Mary and Frank were each devised an undivided one-half of a certain 105-acre tract, "to have and to hold the same upon the same terms and conditions as the other lands willed to my son and daughter in and by my last will and testament, to which this is and shall be a codicil." On July 19, 1899, Frank filed a bill for partition of all the lands of which Dorrel F. Wright died seized. A decree was entered in accordance with the prayer of the bill, dividing and setting off to each of the parties thereto certain portions of the lands in severalty, such partition being made by the decree entered therein, "subject to the conditions and in accordance with the limitations contained in the last will and testament of Dorrel F. Wright, deceased, and the codicils thereto annexed."

Mary E. Wright in 1885 intermarried with William L. Dustin. A child, Julian, was born to them, who died in infancy. On May 2, 1901, another child, Geraldine, one of the appellants herein, was born and is now living. Dustin died intestate on December 10, 1917, leaving as his only heirs the appellants, Mary E. and Geraldine Dustin. On May 21, 1888, Stephen Evans and J. Frederick Cull recovered a judgment against William L. Dustin and others for

the sum of $1316.86 and costs. In May, 1895, this judgment was sought to be revived by *scire facias* proceedings against Dustin. In January, 1887, appellee George D. Corwine recovered a judgment against Dustin and others in the circuit court of Logan county for the sum of $1387. In January, 1898, *scire facias* proceedings were filed against Dustin to revive said judgment, and orders were entered in each case reviving the judgment as against Dustin alone. In February, 1898, executions were issued on both of these judgments against Dustin and levies were made and sales had thereunder. The sheriff's deed issued on October 26, 1899, conveyed to Cull and Corwine, as tenants in common, the alleged interest of Dustin in the lands devised by the will of Dorrel F. Wright to his daughter, Mary, wife of Dustin, by the second clause of the will and the second clause of the codicil, being one-half of the home farm of 1100 acres and of the 105-acre tract mentioned in the codicil, which had been assigned to Mary in the partition proceedings between her and her brother, Frank, and the question here arises whether or not upon the birth of the infant, Julian, to Mary E. and William L. Dustin, the fee to the lands vested in said child subject to being opened up to let in after-born children, and that upon Julian's death Dustin took a one-half interest in said lands as the heir of said infant.

The sheriff's deed purported to convey to James F. Cull an undivided seventy-second part and to George D. Corwine an undivided twenty-eighth part of the interest of William L. Dustin in the lands described in the deed, being the lands herein referred to as having been sold under execution. Cull having died, the appellee Margaret Helen Cull Brown, as his sole heir-at-law, stands in his place.

It appears from the record that on July 1, 1919, Geraldine Dustin, then of legal age, released and quit-claimed to her mother, Mary E. Dustin, a tract of .37 of an acre in the land herein referred to as the home farm of Dorrel F.

Wright, and also another tract of one acre out of the 105-acre tract passing under the second clause of the codicil to the will. On the 5th day of July, 1919, Mary .E. Dustin re-conveyed by quit-claim deed to .Geraldine an undivided one-half interest in the two small tracts of land, and thereupon Geraldine filed the present bill for partition, to remove cloud and for the construction of the will of Dorrel F. Wright, setting up the transactions reference to which has hereinbefore been made. The bill alleged that the judgments, levy of execution and sale thereunder were irregular and void and constituted a cloud on the complainant's title, and asked for a partition of the tracts of land contained in the conveyances between the complainant and her mother. Appellees were made parties and answered, claiming an interest in the lands involved under their sheriff's deed. Later appellees filed a cross-bill, in which they asked for a reformation of the sheriff's deed issued to Evans and Cull in 1899, on the ground that a mutual mistake occurred, alleging that their interests, instead of being an undivided seventy-second part and an undivided twenty-eighth part, are an undivided seventy-two-hundredths and an undivided twenty-eight-hundredths of the tracts of land described in the deed, and by their cross-bill praying partition of the remainder of all the lands in which Mary E. Dustin acquired a life interest under the will and codicils of Dorrel F. Wright. Appellants answered this cross-bill, denying the averments as to the validity of the sheriff's deed or that there was a mistake, and setting up that more than twenty years having elapsed since the making of the sheriff's deed, appellees have been guilty of *laches,* and for that reason are not entitled to have any reformation of the deed. The answer further denied that appellees had any interest in the premises.

The cause was referred to the master, who reported the equities with the cross-complainants and recommended the granting of the relief sought by the cross-bill. The master

expressly found that Mary E. Dustin was incapable of further childbearing, and that therefore the rights and interests of the parties were not subject to being further opened up to let in after-born children but the interests in the lands in question had become fixed. He recommended also the reformation of the sheriff's deed and partition of the remainder in the lands involved in accordance with the prayer of the cross-bill. He also found that Mary E. Dustin took a life estate in the lands devised to her by her father under the second clause of the will and the second clause of the codicil, with the remainder vested in her children when born, and that upon the birth of Julian the remainder vested in him, and later by his death descended to Mary E. and William L. Dustin as his heirs-at-law, and that the interests held by William passed under the sheriff's deed to the holders thereof, but were subsequently opened up and decreased to a one-fourth interest in the remainder upon the birth of Geraldine Dustin. The court entered a decree in conformity with the master's findings.

The contention of the appellees is that both under the second clause of the will and the codicil of Dorrel F. Wright, Mary E. Dustin took a life estate, and that upon the birth of her first child, Julian, the entire fee in remainder vested at once in the child subject to being opened up upon the birth of other children, and that upon the death of Julian in infancy the entire fee passed as intestate property, one-half to the mother and one-half to the father, William L. Dustin; that these are vested remainders, and the appellees having judgments against William L. Dustin, under which execution was issued and levy made upon the interest of Dustin, the sale of the remainder in these lands as his property passed the fee to a half interest therein to appellees, and that upon the birth of Geraldine this remainder opened up so as to make a portion for her, and Dustin's interest was thereby diminished to a one-fourth interest in an undivided fee in the remainder, and that the appellees

under their sheriff's deed are owners of this one-fourth interest and entitled to partition under their cross-bill filed herein.

Appellants contended in the lower court, and contend here, that the remainder in the lands devised by the second clause of the will to Mary E. Wright was a contingent remainder, contingent on the children surviving the life tenant; that said remainder did not vest during the life of Mary; that therefore such remainder did not vest in the infant, Julian, and did not upon the death of said infant pass by way of an inheritance to Mary E. and William L. Dustin, as contended by appellees. Appellants also contend that Mary took a fee to the undivided one-half of the lands described in the second clause of the codicil, and that by the decree in the partition proceeding instituted by Frank C. Wright she took her one-half in severalty, and that she holds the fee thereto and appellees have no interest therein.

The basic question to be decided in this case is whether or not the remainder over after the life of Mary E. Dustin was vested on the birth of issue or contingent upon such issue surviving the life tenant. If the remainder is so contingent appellees have no partitionable or other interest in any of the property in question even though their judgments be valid. On the other hand, if the remainder became vested on the birth of a child to the life tenant, subject to being opened up to let in after-born children, the judgment creditors by their sheriff's deed, if the same be held valid, have an interest in whatever property passed to William L. Dustin as the heir of his deceased child, Julian. The question, therefore, is one of the construction of the second clause of the will and the second clause of the codicil.

Considering first the devise under the second clause of the codicil, the question arises whether or not Mary E. Dustin took a life estate or the fee therein. Appellants contend that by the second clause of the codicil the 105-acre tract was given to Frank C. and Mary E. Wright in fee; that

by the language "to have and to hold the same upon the same terms and conditions as the other lands willed to my son and daughter in and by my last will and testament" the testator intended to convey the fee. Under clause 2 of the will Mary E. Wright, admittedly, was given a life estate. Under the fourth clause of the will she was devised certain lands (not involved here) in fee. Without the above quoted language the second clause of the codicil devised a fee, and the question is, Does that language cut down the interest to a life estate in Mary? This question came up in a very similar devise in the case of *Spatz* v. *Paulus*, 285 Ill. 82. Under the will in that case Louis W. and Henry J. Paulus and Hermina M. Baker were given certain tracts of land with power to make deeds conveying to one another the fee thereof, but with the restriction that such "conveyance shall convey the title to the grantee, to be held on the same terms and conditions and for the same time as the real estate received by said grantee in my real estate by this will." By the will the testator had devised to his children a life estate in certain lands and the fee in certain other lands, and it was held that this language was too vague to cut down the estate in fee to a life estate, this court there saying: "Under the fourth, eighth and eleventh clauses of the will Hermina M. Baker receives certain real estate for life, while under the tenth clause she receives certain real estate in fee. It is therefore impossible, except by conjecture, to determine which devise of real estate to Hermina M. Baker the testator had in mind, when, after empowering Louis W. Paulus and Henry J. Paulus each to convey an undivided one-third interest in fee to Hermina M. Baker, he provided that Hermina M. Baker should hold such one-third interest 'on the same terms and conditions and for the same time' as the real estate received by her under the will." We are of opinion that said language of the second clause of the codicil is too vague to cut down the estate in fee to a life estate and that the lands therein described were devised to

Mary E. and Frank C. Wright in fee, and that appellees have no interest therein.

Coming now to a consideration of the question whether the remainder created by the second clause of the will was vested or contingent, we find this language: "And after her death to her children and their descendants forever." In *Bates* v. *Gillett,* 132 Ill. 287, the words "children" and "descendants" are taken as showing the intention of the testator that not only should the life tenant have children, but that such children must themselves have issue and decease before the time for the vesting of the estate should arrive, and that, this being so, the remainder was contingent not only upon the birth of children to the life tenant but upon their surviving the period when the estate was to vest in possession. In *Knight* v. *Pottgieser,* 176 Ill. 368, the will provided that upon and at the death of the life tenant the property devised "shall go to and be divided amongst my children and their descendants," and it is there held that though the word "descendants" means only those persons who have proceeded in some degree from the body of a child of the testator, and that the selection and use of that word indicated that it was the intention of the testator to exclude from the devise those who, though heirs-at-law of a deceased child, were not the direct or remote issue of such child, yet that, nevertheless, did not disclose an intention on the part of the testator that those whom he intended to receive his bounty should not be determined during the life of the life tenant, it there being held that such language was but his declaration as to the class of persons who should take and not as to the time when vestiture should occur.

In *Bates* v. *Gillett, supra,* relied upon by the appellants, much stress is laid upon the language "after the death" of the life tenant, as expressing the intention of the testator that the division of his estate among the children and descendants of the life tenant should not occur and the es-

tates therein should not vest until after the death of the life tenant. It has, however, been so many times held in this and other States that the rule may be said to be well established, that the words "after the death of A," and similar expressions, are to be construed as meaning at the termination (whenever and in whatever manner that may occur) of the particular estate of freehold and as referring to the time when the estate will vest in possession, only. The remainder thus created "after the death of A" is held to be a vested remainder unless there be that in the context which clearly takes it out of the rule. *Doe* v. *Considine,* 73 U. S. 458; *Byrnes* v. *Stilwell,* 103 N. Y. 454; *Minnig* v. *Batdorff,* 5 Pa. 503; *Cheney* v. *Teese,* 108 Ill. 473; *O'Melia* v. *Mullarky,* 124 id. 506; *Ducker* v. *Burnham,* 146 id. 9; *McConnell* v. *Stewart,* 169 id. 374; *Knight* v. *Pottgieser, supra; Bowler* v. *Bowler,* 176 Ill. 541; *Lynn* v. *Worthington,* 266 id. 414; *Brown* v. *Brown,* 247 id. 528; *People* v. *Camp,* 286 id. 511; *Henkins* v. *Henkins,* 287 id. 62.

An examination of the above cases and a comparison of them with *Bates* v. *Gillett, supra,* will disclose that the construction put upon the words "after the death" in the latter case is not in harmony with the general rule in this country, and while the construction adopted in any case is not controlling, as the intention of the testator in each case is the thing sought, yet unless there be in the language something to suggest a different construction that generally adopted should be adhered to. It has long been a fixed rule to be observed in the construction of wills by the courts of this country and England, that the estate granted under a will should be deemed to vest upon the death of the testator unless very clear words were found in the will showing the manifest intention of the testator that the estate granted should not vest except upon the happening of a certain contingency. (*Carper* v. *Crowl,* 149 Ill. 465; *Allen* v. *McFarland,* 150 id. 455; *Grimmer* v. *Frederich,* 164 id. 245.) It

is likewise the rule that if the distribution of the estate devised is not deferred for some reason personal to the devisee but merely because the testator desires to appropriate the subject matter of the devise to the use and benefit of another for and during the natural life of the latter, the vesting of the gift by remainder will not be postponed but will occur at once, the right of enjoyment only being deferred. *Scofield* v. *Olcott,* 120 Ill. 362; *Carper* v. *Crowl, supra; Knight* v. *Pottgieser, supra.*

Viewing the language of the second clause of the will in the light of these rules and the policy of the law, we are of the opinion that there is nothing in the second clause of the will which takes the devise out of the rule governing the vesting of remainders, and that upon the birth of a child to the life tenant the estate in remainder vested in fee in such child, subject to being opened up to let in afterborn children. Under this construction, upon the death of Julian the remainder in fee to the lands described in the second clause of the will passed to his heirs-at-law, of whom William L. Dustin was one, and William took one-half of the remainder in fee, subject to being reduced by the birth of after-born children to his wife, Mary. The birth of Geraldine Dustin reduced the interest of William to onefourth. Under the rule now settled in this State, the law recognizes the possibility of birth of issue in all adult women, and the single fact that terminates the possibility of issue is death. (*Hill* v. *Sangamon Loan and Trust Co.* 295 Ill. 619.) Therefore the possibility of the birth of further children to Mary is to be determined only upon her death. It follows, for that reason, that the interest of William is not determined, and that the appellees, as holders of the sheriff's deed for the interest of William, have no determined quantum of interest in the lands in question. The rule is that partition of an estate in remainder subject to a life estate cannot be had at the instance of one remainder-man, where the members of the class of

persons in which the remainder is vested cannot be definitely ascertained until the death of the life tenant, so as to set off their shares in severalty. (*Richardson* v. *VanGundy*, 271 Ill. 476.) Under these rules it is apparent that during the lifetime of Mary E. Dustin appellees have no partitionable interest in the lands in question.

Coming now to the consideration of the right of Geraldine Dustin to partition under her original bill, we find that at the time she gave her quit-claim deed to 1.37 acres of the land devised under the second clause of the will, known as the home farm, she owned an undivided one-half interest in the remainder in fee to said lands, subject to being further diminished by the birth of other children to Mary E. Dustin. She therefore conveyed a one-half interest in such remainder in fee in the 1.37 acres, subject to being reduced by the birth of other children to said life tenant. As Mary E. Dustin already held a one-fourth interest in the remainder subject to being opened up as aforesaid, when she re-conveyed a one-half interest in the 1.37 acres to Geraldine her deed had the effect of conveying an undivided one-half interest in the life estate of Mary in the 1.37 acres and a three-eighths interest in fee in the remainder, which was, however, subject to being reduced by the birth of after-born children to Mary. The result is that the transactions and conveyances between Geraldine and Mary did not vest in Geraldine a partitionable interest in the said tract of land. (*Richardson* v. *VanGundy, supra.*) As to the conveyance of Geraldine to her mother of the one acre tract within the 105-acre tract devised under the second clause of the codicil, we have seen that Mary has the fee to the portion of that tract set off to her and Geraldine conveyed nothing by her deed; but for the same reason, when Mary re-conveyed a one-half interest in that land to Geraldine she conveyed an undivided one-half interest in fee to the one-acre tract. Therefore, so far as that tract is concerned, Geraldine has a partitionable interest.

Coming now to a consideration of the question whether or not appellees are entitled to a reformation of their sheriff's deed, we find it averred in the cross-bill of appellees that by error of the scrivener who wrote the sheriff's deed the portion of the lands therein described to which James F. Cull was entitled was an undivided seventy-second part and that to which George D. Corwine was entitled was an undivided twenty-eighth part thereof; that the deed should be amended so as to make the recitals express the true intent and meaning of the deed,—that is, that Cull acquired an undivided seventy-two one-hundredths and Corwine acquired an undivided twenty-eight one-hundredths of all the right, title and interest of William L. Dustin in and to the premises described in the sheriff's deed. The prayer of the bill is that the sheriff's deed be so reformed and amended. Appellants in their answer deny that the scrivener writing the deed made an error, and in addition allege gross *laches* on the part of appellees in seeking to have any reformation of the deed, and that by reason thereof they should be barred from asserting any such right to reformation. A formal replication was filed to this answer and no amendment of the bill was sought, and it is urged by appellants that for that reason the appellees were not entitled to the reformation sought and that the circuit court erred in decreeing the same.

The rule in reference to the application of *laches* to a stale claim is, that where the complainant in his bill by which he seeks the enforcement of some right which has long lain dormant presents no facts which tend in any way to excuse delay in commencing the proceeding for the relief sought and the defendants in their answer charge *laches* as a defense to the right of the complainant to such relief, it then devolves upon the complainant to amend his bill and allege an excuse for his *laches*. (*Hall* v. *Fullerton*, 69 Ill. 448; *Walker* v. *Ray*, 111 id. 315; *Harding* v. *Durand*, 138 id. 515; *Coryell* v. *Klehm*, 157 id. 462; *Kerfoot* v.

*Billings,* 160 id. 563.) This rule finds its reason in the doctrine that when a court of equity is asked to lend its aid in the enforcement of a stale claim there must be some cogent and weighty reasons presented why it has been permitted to become so. The assistance of a court of equity comes where the party seeking it appears to have used reasonable diligence and good faith and conscience in asking for such relief. In the absence of these elements it is a fundamental rule in equity that the court remains passive and declines to extend its relief or aid. A court of equity has always discountenanced *laches* and neglect. (*McDearmon* v. *Burnham,* 158 Ill. 55; *Eastman* v. *Littlefield,* 164 id. 124.) There is nothing in the bill to show why this relief was not earlier sought or when appellees became aware of the alleged mistake in drawing the deed. That being true, they must be held to have had knowledge of it from the time the instrument was made. (34 Cyc. 976.) Appellees were not entitled to have the deed reformed, and in decreeing the reformation thereof the chancellor erred.

It is contended by appellants that the proceedings to revive the judgment of Evans and Cull entered against William L. Dustin were void for the reason that it was sought to revive that judgment as against Dustin, only, and not as against other co-defendants therein. The record discloses that Dustin entered his appearance in the proceeding to revive this judgment and consented to immediate judgment reviving the same. This was a judgment of revival by consent and binding on Dustin and his privies. (23 Cyc. 729.)

Appellant Geraldine Dustin by her bill for partition sought to remove the judgments and deed of appellees as a cloud upon her title. So far as is shown by this record the judgments, and the deed issued thereunder, are valid in so far as they affect the lands involved under the second clause of the will, but such judgments and deed do not constitute a lien or evidence of title as against the lands ac-

quired under the second clause of the codicil, and as to such lands they should be removed as a cloud thereon.

For the reasons here indicated the decree of the circuit court will be reversed and the cause remanded, with directions to dismiss the cross-bill of appellees and the original bill of Geraldine Dustin in so far as the same relate to the land devised by the second clause of the will, and to enter a decree ordering partition of the one-acre tract out of the land referred to herein as the 105-acre tract devised to Mary E. Dustin by the second clause of the codicil, and removing the sheriff's deed as a cloud on the title so far as the same relates to said land last referred to. It is further directed that the circuit court enter a decree finding the rights of the parties in accordance with the views herein expressed.

*Reversed and remanded, with directions.*