(No. 29327.—

JEROME J. CROWLEY *et al.*, Trustees, *vs.* MILDRED E. ENGELKE *et al.*—(FRODE STOLTZNER *et al.*, Appellants, *vs.* HELEN E. CROWDER *et al.*, Appellees.)

*Opinion filed May 21, 1946—Rehearing denied September 12, 1946.*

FARTHING, FARTHING & FEICKERT, of Belleville, and JAMES D. PETERSON, of Chicago, for appellants Frode Stoltzner *et al.*

WALTER F. BOYE, of Chicago, for appellants Mildred S. Engelke *et al.*

JOHN B. KING, ROY MALCOLM MCKERCHAR, GOTTHARD A. DAHLBERG, and DAVID J. A. HAYES, all of Chicago, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This appeal has a double aspect, and for conciscness the different issues should be pointed out preliminary to a discussion of the case. A suit in equity was filed in the superior court of Cook county by the trustees under the will of Henrietta Snell, deceased, to determine the true parties in interest who were entitled to a distribution of the funds in the hands of the trustees under such will. The only property in controversy in this suit was that claimed to have vested in Chester Snell Coffin, deceased,

a grandson of Henrietta Snell and who died after her, before the termination of the trust. It is agreed that if Chester Snell Coffin had a vested interest in the *corpus* of the estate as a remainderman, he being a child of Grace Henrietta Love, a child of Henrietta Snell, a one-half interest in his share upon his death passed to Helen M. Coffin Lauer, his surviving widow; and a one-eighth interest each to his father, Franc Nixon Coffin; his mother, Grace Henrietta Love; his sister, Mildred S. Engelke; and his half sister, Helen Stroh.

Grace Henrietta Love and Franc N. Coffin assigned a part of their interests, as heirs of Chester Snell Coffin, to Henry Arthur Ingalls, which by *mesne* assignment finally vested in Helen E. Crowder and Ernest E. Danke. Mildred S. Engelke assigned to Frode Stoltzner what purported to be all of her interest as heir-at-law of Chester Snell Coffin, deceased, and Helen Stroh likewise assigned what purported to be all of her interest as heir-at-law of Chester Snell Coffin, deceased, to Frode Stoltzner, all of which said assignments were executed before the termination of the trust.

The court held all of these assignments to be valid with the exception of that of Mildred S. Engelke and Helen Stroh, both made to Frode Stoltzner, and both of which the court held to be void. Stoltzner appealed these rulings against him, as also did Mildred S. Engelke, O. G. Hoegstedt and Helen M. Lauer, against whom decrees were rendered holding their respective assignments of other interests valid. A freehold is involved because at the time the assignments were made unsold real estate remained in the trust.

The ground of Stoltzner's appeal is that the finding of the master in chancery, approved by the court, holding his assignments void because of fraud, was contrary to the evidence. Mildred S. Engelke, O. G. Hoegstedt and Helen M. Lauer appeal upon the ground the interest of Chester

Snell Coffin in the *corpus* of the estate was a contingent interest and not subject to assignment, and therefore, even though the assignments were made in good faith, they transferred something that was not subject to being assigned. Thus it appears the facts surrounding the transaction of the assignments to Frode Stoltzner and the facts surrounding the assignments made of the other interests, would be wholly immaterial if the interest of Chester Snell Coffin in the estate of Henrietta Snell, deceased, were contingent and unassignable. It, therefore, becomes necessary in the first instance to ascertain whether the interest of Chester Snell Coffin was a vested interest subject to assignment; and, if it is a vested interest, the fairness and legality of each of the assignments is open for consideration. On the other hand, if it should be determined that the interest of Chester Snell Coffin is a contingent interest, all of the assignments should be held invalid, regardless of any other question in the case.

We might say parenthetically that while Helen M. Lauer appears as an appellant we have found nothing in the briefs concerning her interests, but do find a statement in the brief of Mildred S. Engelke and O. G. Hoegstedt to the effect that the controversy between Helen M. Lauer and her assignees has been settled. No stipulation or other statement appears regarding the disposal of the Helen M. Lauer issue. Attorneys owe a duty to the court to indicate the settlement of a case which has been transferred to this court by notice of appeal.

In order to determine whether Chester Snell Coffin had a vested interest in the estate left by Henrietta Snell which would be subject to assignment, or whether he had only a contingent remainder which would not be subject to assignment, requires an examination of the will. The will is long, and only the material parts necessary for the decision of this point will be set out. However, in general, the will provided that all of her estate be devised to

three trustees, who were to hold the property during the lives of Albert Jerome Snell and Grace Henrietta Coffin, testatrix's children, and Willey McCrea, her son-in-law, who was the father of two grandchildren of testatrix by the name of Willey Solon McCrea and Henrietta Alice McCrea. These two grandchildren were to receive the income from the share of their mother, and, upon the death of the two children of testatrix and the son-in-law, distribution was to be made.

The will was executed February 2, 1899; Henrietta Snell died February 3, 1900; the will was admitted to probate April 7, 1900. At the time of testatrix's death Grace Henrietta Coffin Love, a surviving daughter, had two children, *viz.*, Mildred S. Coffin, now appearing as appellant Mildred S. Engelke, and Chester Snell Coffin, a son; and also another son, Jerome S. Coffin, who died prior to the death of his grandmother, leaving no descendants and no interest in the estate. Chester Snell Coffin died October 24, 1912, leaving as his heirs his widow, Helen M. Lauer, Franc Nixon Coffin, Grace Henrietta Love, Mildred S. Engelke and Helen Stroh, whose interests as heirs are pointed out above.

The material parts of the will are the fourth, seventh and ninth clauses, the material parts of which are as follows:

"Fourth. I give, devise and bequeath unto A. W. Adcock, Homer M. Thomas and Frank L. Salisbury, my trustees herein appointed, all the real estate of which I may die possessed, to be held, managed and controlled by them during the lives of Albert Jerome Snell, Grace Henrietta Coffin and Willey McCrea. The two first mentioned are my children; the other, Willey McCrea, married my daughter Alice, and is the father of Henrietta Alice McCrea, above mentioned. My said trustees shall hold said real estate in trust and shall have sole and exclusive charge, management and control of it until the death of the said Albert Jerome Snell, Grace Henrietta Coffin and Willey McCrea and not until the death of all of them shall the trusts, herein created, end. * * * And my trustees shall, each and every year pay one-

third of the net income from said real estate unto my daughter, Grace Henrietta Coffin during the term of her natural life, provided, however, that my trustees, whenever they may deem fit and proper, may use all or any portion of the said Grace Henrietta Coffin's shares of said income for the education, support and maintenance of her children, Mildred A. Coffin and Chester Snell Coffin, (or either of them) during the lifetime of the said Grace Henrietta Coffin. * * *

"Seventh. Upon the termination of the trusts herein created, that is, upon the death of Albert Jerome Snell, Grace Henrietta Coffin and Willy McCrea, I devise and bequeath all the remainder of the real estate then being in the possession and control of my trustees, or their successors in trusts, as follows: * * * One-third thereof, in fee, to the lawful children of the said Grace Henrietta Coffin, their heirs and assigns forever. * * *

"Ninth. I hereby authorize and direct my trustees, in their judgment and discretion to sell and convey any or all of my vacant real estate. * * * If in the judgment of my trustees it is fit and proper, my trustees may use all of or any part of the proceeds of sales for the proper support and maintenance of the families of Albert Jerome Snell and Grace Henrietta Coffin; or the proceeds may be invested, changed or reinvested, and the income therefrom distributed, as hereinbefore provided for the distribution of said net income, until the termination of the trust herein created, and then upon the death of Grace Henrietta Coffin, Albert Jerome Snell and Willey McCrea, the principal, if any, in the hands of my trustees from the sales of real estate shall be distributed as follows: One-third (⅓) thereof to the legal children of Albert Jerome Snell; one-third (⅓) thereof to the legal children of Grace Henrietta Coffin, and the remaining one-third (⅓) thereof to Henrietta Alice McCrea and Snell McCrea, provided, * * *."

The question raised by Mildred S. Engelke and O. G. Hoegstedt is that the interest of Chester Snell Coffin, who died in 1912, was not vested, but was wholly contingent, therefore rendering void any assignment of his interest. The general rule, as established by a long line of decisions in Illinois, is that a vested remainder is one which throughout its continuance gives to the remainderman, or his heirs, the right to the immediate possession whenever and however the preceding estate may determine. (*Brown v. Brown*, 247 Ill. 528; *Lachenmyer v. Gehlbach*, 266 Ill. 11;

*Carter* v. *Carter,* 234 Ill. 507; *Smith* v. *Shepard,* 370 Ill. 491; *Fleshner* v. *Fleshner,* 378 Ill. 536.) In the last mentioned case the subject is re-examined and the general rule followed.

In the *Fleshner case* the provision of the will was as follows: "Second: After the payment of such funeral expenses and debts, I give, devise and bequeath all of my property of every description, wherever situated to my beloved wife, Cena Fleshner, to have and to hold for and during her natural life. After the death of my wife, Cena Fleshner, I give, devise and bequeath, share and share alike, to my beloved children, [naming them] or the surviving heirs of their body, the residue of my estate." In this case it was held there was a vested remainder in the children, subject to being divested, which constitutes a determinable or base fee. A determinable or base fee is a vested remainder. *Smith* v. *Shepard,* 370 Ill. 491.

In the present case the will provides: "Seventh. *Upon* the termination of the trusts herein created, that is, *upon* the death of Albert Jerome Snell, Grace Henrietta Coffin and Willey McCrea, I devise and bequeath all the remainder of the real estate then being in the possession and control of my trustees, or their successors in trusts, as follows: * * * One-third thereof, in fee, to the lawful children of the said Grace Henrietta Coffin, their heirs and assigns forever;" and in the ninth clause: "and then *upon* the death of Grace Henrietta Coffin, Albert Jerome Snell and Willey McCrea, the principal, if any, in the hands of my trustees from the sales of real estate shall be distributed as follows: * * * one-third (⅓) thereof to the legal children of Grace Henrietta Coffin."

It will be noticed that both with respect to the real estate and the personal property in the hands of the trustees it is to vest in the lawful children of Grace Henrietta Coffin *upon* her death. The words "at death," "after death," or "upon death," have uniformly been held to be words which

refer not to the time when the remainder is to vest in interest, but to the time when it is to fall into possession. Specifically, the word "upon" has been held to have this meaning in *Brown* v. *Brown,* 253 Ill. 466; *Whittaker* v. *Porter,* 321 Ill. 368; *Danz* v. *Danz,* 373 Ill. 482. "At" and "upon death" is given the same meaning in *Knight* v. *Pottgieser,* 176 Ill. 368. The word "at" has been given a similar meaning in *McConnell* v. *Stewart,* 169 Ill. 374; *Palmer* v. *Jones,* 299 Ill. 263; *Boys* v. *Boys,* 328 Ill. 47, and *Gahan* v. *Golden,* 330 Ill. 624. And likewise, the word "after" in *Lynn* v. *Worthington,* 266 Ill. 414; *Dustin* v. *Brown,* 297 Ill. 499; *Baley* v. *Strahan,* 314 Ill. 213; and *Fleshner* v. *Fleshner,* 378 Ill. 536, has been given a similar construction.

It is very clear that words of the meaning and character just referred to have reference to the time when the interest is to fall into the possession of the remainderman. Early in the history of the State there were cases which indicated a different result, *viz., Rickner* v. *Kessler,* 138 Ill. 636, which has never been followed; and *Bates* v. *Gillett,* 132 Ill. 287, which was expressly overruled in *Dustin* v. *Brown,* 297 Ill. 499; and *Kleinhans* v. *Kleinhans,* 253 Ill. 620, which was overruled in *Johnson* v. *Boland,* 343 Ill. 552.

The rule is thoroughly and well established at the present time. Applying then the rule of what constitutes a vested remainder, we find that the seventh clause, *upon* the death of Grace Henrietta Coffin, devises one third of the real estate in fee to the lawful children of Grace Henrietta Coffin; and the ninth clause, *upon* the death of Grace Henrietta Coffin, bequeathes one third of the principal in the hands of the trustees to the legal children of Grace Henrietta Coffin. At the time Henrietta Snell died Grace Henrietta Coffin had two legal children living, *viz.,* Chester Snell Coffin and Mildred S. Engelke. Under the rule,

by the use of the words "upon the death of," the possession of the remainder was deferred until after the death of Grace Henrietta Coffin, but since lawful children were alive, capable of taking possession of the remainder whenever and however the preceding estate may be determined, the remainder became in law vested in these living lawful children of Grace Henrietta Coffin, although the possession was deferred. As noted, however, the rule vests the title in the remainderman or *his heirs*. Chester Snell Coffin died during the particular estate, but upon his death his interest vested in his heirs, who were the persons designated above. The remainder being vested, the only matter that was deferred was the possession, and such remaindermen or their heirs, or assignees, became entitled to possession upon the ending of the life interests.

A number of cases have been cited which are not material to the question under consideration. Considerable reliance is placed upon the case of *Hasemeir* v. *Welke*, 309 Ill. 460. It is to be observed that the court held a base or determinable fee was involved in that case because, after creating a life estate, the devise was not to a child and his heirs, but to a child, or in case of death, then to the heirs of his body. This was held to create a base fee in the children, but in case of children of a child who predeceased testator, an absolute fee. The case does not support the contention of Engelke *et al.* as appellants on this issue.

There is a long line of authorities supporting the statement of Gray in his Rule Against Perpetuities, section 108, that if the conditional element is incorporated into the description of or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested.

In *Johnston* v. *Herrin*, 383 Ill. 598, the remainder was not to named individuals or their heirs, but to "surviving"

descendants, which was an incorporated part of the gift, and the beneficiaries could not be known until the death of the testator.

Without unduly prolonging this discussion of the cases cited to establish that the interest of Chester Snell Coffin was a contingent remainder, we find they either involve a case in which the conditional element was incorporated into the description, or incorporated into the gift to the remainderman, making it a contingent remainder, or were cases where a conditional fee was created. Since under the will of Henrietta Snell the trusts ran for the concurrent lives of three persons, with a devise *upon* the death of such persons, the gift was vested and only the enjoyment part passed, making such cases inapplicable. We entertain no doubt that the interest of Chester Snell Coffin in the estate of his grandmother was a vested interest.

Also it is claimed the spendthrift provisions of the will of Henrietta Snell invalidate any assignment made by Grace Henrietta Coffin Love or Albert Jerome Snell, and consequently of Chester Snell Coffin. We do not quarrel with the statement and claim with regard to the effect of a spendthrift provision upon the interest of the spendthrift and the assignability of the interest given to the spendthrift by the will of the testator. Chester Snell Coffin was designated as remainderman. There is no spendthrift provision in the will respecting his interest. He does not obtain possession or enjoyment of the property until the termination of the trust. There can be no spendthrift provision as to him, because he takes possession when the trust ends, and certainly there is no rule which applies a spendthrift provision affecting the ancestor to a child who takes the remainder in fee. Neither can it be said the spendthrift provision applies to the interests of the parties in this case who take as heirs of Chester Snell Coffin. When they acquire such interest they acquire it as heirs of Chester Snell Coffin, and not as devisees under the will

of Henrietta Snell. When they come to its enjoyment, it is after the termination of the trust, as heirs and not as devisees, and so, while the spendthrift provision might operate to prevent an assignment of Grace Henrietta Coffin Love as to what she took under the will of her mother, it could not operate to have such effect upon something she acquired as an heir of another person. The contention in this respect is without force, and the decree of the superior court of Cook county in so holding is affirmed.

This leaves for consideration the validity of the several assignments of interest by the several appellants and appellees who claim shares in that part of the estate which Chester Snell Coffin would have taken as heir had he been living. This involves several different considerations. First, Mildred S. Engelke made an assignment in 1938 to Frode Stoltzner, purporting to transfer to him all of her interest acquired as heir of Chester Snell Coffin, deceased. A like assignment was made by Helen Stroh, a half sister of Chester Snell Coffin.

Mildred S. Engelke has also another contention by which she claims the assignment made by her mother Grace Henrietta Coffin Love to Henry Arthur Ingalls was also void, and therefore, as the heir of her mother, she takes this interest, which by *mesne* assignment was claimed by appellees Ernest E. Danke and Helen E. Crowder. And finally, there is the appeal of Helen M. Lauer, widow of Chester Snell Coffin, deceased, who has assigned part of her interest to certain attorneys, which appeal is not argued, but, so far as it is included within the contention that the interest of Chester Snell Coffin was contingent and unassignable, is determined in the preceding portion of this opinion, and need not be further considered in this appeal.

The interest of Mildred S. Engelke as heir of Grace Henrietta Coffin Love is in part represented by an assignment to O. G. Hoegstedt. The principal controversy grows out of the claim that the assignment made by Mildred S.

Engelke to Frode Stoltzner is void and unenforcible on account of fraud.

When the trustees filed their complaint for the purpose of ascertaining the persons interested in the distributive shares of the estate, Frode Stoltzner was made a party by reason of the fact that he had filed assignments of the interests of Mildred S. Engelke and Helen Stroh, sisters, and each an heir of a one-eighth interest in the estate of Chester Snell Coffin, deceased. Both Mildred S. Engelke and Helen Stroh filed answers and counterclaims, and, in the counterclaims, set up that the assignments were fraudulent and void. Stoltzner answered both cross complaints, denying any fraud. Both parties seem to take the position that the assignments covered the entire interests which the respective sisters had in the property of Chester Snell Coffin, regardless of whether it was considered real or personal property. In his report the master in chancery took the position that the assignments covered every interest Chester Snell Coffin had, that they had a present value of approximately $25,000, had been made in consideration of $650 and $700, respectively, and were fraudulent because of certain statements contained in the original letter of inquiry of Stoltzner.

There appears to have been no consideration given to whether the assignments covered *only* the unsold land, or the entire interest, including investments, but the master in chancery reported that if the assignments had been limited to unsold land the transaction would be valid and not fraudulent. We are of the opinion the master in chancery has misconceived the offer in the letters of Frode Stoltzner and the property concerning which he wrote and was seeking to purchase. A number of circumstances of a minor character have been called to our attention tending to show the transaction was fraudulent as applied to all of the interest owned by Chester Snell Coffin, but, if the letters

applied to only that portion of the estate of Chester Snell Coffin consisting of unsold real estate, the acts of the parties may be given an entirely different construction.

The letter of August 26, 1938, written by Stoltzner to Mier and Schaper, attorneys of Los Angeles, is the basis of the claim of fraud. In that letter, after referring to the fact that the granddaughter of Henrietta Snell (Mildred S. Engelke) was an heir-at-law of Chester Snell Coffin, Stoltzner asks that the matter be taken up to see if she is willing to sell such interest. He then says there is a legal question involved as to whether Chester Snell Coffin had a vested interest which descended to his heirs, or whether he had to live until the termination of the trust to pass an interest; he then states the law of Illinois on descent as follows: "When there is a widow or surviving husband and also parents, brothers and sisters of the deceased and their descendants but no child or children, or descendants of a child or children of the intestate, then * * * one-half of the real estate and the whole of the personal property shall descend to such widow or surviving husband * * * and the other half of the real estate shall descend to the parents, brothers and sisters of the deceased, * * * allowing to each of the parents, if living, a child's part or to the survivor of them, if one be dead, a double portion." This was substantially a correct statement of the law of descent in 1938. The letter also refers to the fact that the widow of Chester Snell Coffin would be entitled to dower in the other half of the real estate, which is of doubtful accuracy because of the peculiar nature of the estate but does not seem to be questioned by counsel.

The letter contains this significant statement: "It will thus be seen that the widow of Chester Coffin took all the personal property, one-half of the real estate, and dower in the other half of the real estate. The dower amounts to approximately one-third of the half. It will thus be

seen that the heirs of Chester Snell Coffin inherited approximately one-third of the real estate in which he had an interest. I assume that you have seen a statement of the estate of Henrietta Snell, Deceased, and have observed that approximately $800,000 is invested in securities, and the balance is held in real estate." It is obvious Stoltzner is saying to his correspondent that the widow of Chester Snell Coffin, at his death intestate, took all of the personal property. He calls attention to the fact that there is $800,000 in personal property, and in the last sentence of the letter from which we have quoted he differentiates the real estate from the $800,000 of investments. The letter then calls attention to a report of the trustees, and says: "From his testimony you can form your own conclusions as to the value of that real estate," and makes his own conclusion that he thinks it will not produce more than $100,000 net. Then follows this significant statement: "Assuming that the value of this real estate is $100,000 Chester Coffin's interest would be one-sixth or $16,670. The daughter [Mildred Engelke] of Mr. Coffin would, as stated above, be entitled to one-fourth of approximately one-third of the same, or about $1,450. This amount would be received only after the death of Grace Henrietta Love, which may be sometime in the future. If the party interested does not care to sell her interest, it is entirely satisfactory. I thought, however, that it might be advisable to receive cash at the present time in lieu of the possibilities and delay and possible litigation involved in the future."

We do not think any reasonable person can construe this letter other than as estimating the value upon the unsold real estate in which Chester Snell Coffin had an interest. This is apparent because Stoltzner considered the $800,000 as personal property, Chester Snell Coffin's interest in which he thought under the statute would go to his widow. We think the subject matter of his proposal

has been misunderstood and misapprehended because Stoltz-ner thought the $800,000 was personal property, and that Chester Snell Coffin's one-sixth interest in that personal property would all *go to his widow,* and having this thought in mind he called attention to the real estate, which he thought worth approximately $100,000. The value he computed Mildred S. Engelke to have, $1450, is substantially one-fourth of one-third of Chester Snell.Coffin's interest in $100,000 worth of unsold real estate. This computation could not possibly apply to anything else.

In the letter of October 10, 1938, to Mier and Schaper he calls attention, first, to the Illinois statute of descent definitely defining what the two sisters of Chester Snell Coffin shall receive as heirs; he says they inherit none of the personal property, as personal property goes to the wife; and then says "Assuming that the real estate is of a value of $100,000.00, the interest of each one of the sisters of Mr. Coffin would be approximately $1,450.00 if Mrs. Love were to die today;" and then suggests that $500 would be a fair price to pay, and asks advice as to the fairness of the figure.

November 4, 1938, Mier and Schaper wrote Stoltzner as follows: "Mrs. Mildred Engelke is willing to sell her interest in the Estate of Chester Snell Coffin, for the sum of Six Hundred Fifty Dollars ($650.00). If you will forward to us an Assignment, in proper form according to your desires, we will have Mrs. Engelke execute the same." It will be noted it is said that Mrs. Engelke is willing to sell her interest. What do Mier and Schaper mean by "her interest?" They had received a letter a few days previous explaining the interest of Mrs. Engelke to be one-fourth of one-third of Chester Snell Coffin's interest in $100,000 worth of unsold real estate, and that his interest in $800,000 in trust, under the law of descent, would go to the surviving widow.

The misapprehension of Stoltzner as to the law consisted in his assumption that the $800,000 in investments was personal property. Counsel for both parties agree it was real estate, because it represented the proceeds of real estate sold under the will of Henrietta Snell, without a mandatory conversion clause, (*Tucker* v. *Tucker,* 308 Ill. 371; *Young* v. *Sinsabaugh,* 342 Ill. 82;) but it was a matter upon which Stoltzner, a layman, could easily be mistaken. Physically, it was in the form of personal property. Many cases in this court disclose the fact that lawyers have made the same error, but it is essential here to understand Stoltzner's view of the type and character of the property of Chester Snell Coffin in order to comprehend what he was offering to buy, and what Mrs. Engelke was willing to sell.

In one letter Stoltzner says, in effect, that since Mrs. Engelke is entitled to an interest in the estate of Henrietta Snell in her own right, entirely aside from the property to which she may be entitled as an heir-at-law of Chester Snell Coffin, "I have mentioned in the assignment and conveyance that any property other than that which she acquired from the estate of Chester Snell Coffin, deceased, is specifically excluded from the conveyance which she is executing." This indicates good faith.

When the entire correspondence is examined it will appear as a fact that cannot well be denied that the parties all went upon the assumption that the interest Mrs. Engelke had in the estate of Chester Snell Coffin was limited to her share in the unsold land, and not an interest in any of the land that had apparently been converted into personal property. The master in chancery made a specific finding that $1450 was represented to be the value of the entire one-sixth interest of Chester Snell Coffin in the estate of Henrietta Snell, deceased. This representation does not appear in any of the letters of Frode Stoltzner,

but it is claimed that attorney Schaper stated to Mrs. Engelke that such was the value of her entire interest.

Both Mildred S. Engelke and Helen Stroh testify they were shown the letters of Stoltzner, and that they read them; both testify Schaper represented that $1450 was the value of their interests. If Stoltzner believed their interests were in unsold real estate, and they saw and read his letters to that effect, and Schaper made the same statement as was made in the letter, thus disclosing the subject of purchase was unsold real estate, how can there be any fraud when these statements are substantially true when limited to the subject of sale, as understood by the parties? The assignment covered *all* interests in the estate, not because either party thought they were discussing both the unsold real estate and investments, but because both parties believed their only interest was in unsold real estate, and that the surviving widow took all of the personalty. Confined, then, to what they both believed, the transaction was fair, and the master so finds. This constituted a mistake of fact in applying the law, but does not prevent ascertaining the true subject of the contract. *Peter* v. *Peter,* 343 Ill. 493, is illustrative. We there said: "Private legal rights, interests, duties or liabilities are always more or less complex, particularly to the layman. They depend upon conditions of fact as well as rules of law, and a concrete notion of a private legal right, interest or liability is not readily separated from the facts on which it depends. Such mistakes may therefore be, and frequently are, properly considered as mistakes of fact. There is no fact relating to private rights, interests, estates or liabilities that does not more or less involve rules of law, as where A proves that he is the owner of certain real estate. Such is proved as a fact, yet this fact rests upon the law relating to the sufficiency of the conveyance, the competency of the grantor to convey, and in some instances the form of

the instrument, but A does not the less prove a fact because that fact involves some relation of law. To say that because it involves a legal relation it is not a fact would seem to arise from a confusion of ideas. One may be ignorant or mistaken as to his own antecedent legal existing rights, interests, duties or liabilities though he accurately understands the legal scope of the transaction into which he enters and its effect upon his rights and liabilities." See, also, *Darst* v. *Lang,* 367 Ill. 119.

The object of the complaint was to ascertain to whom the estate should be distributed, and that of course would be ascertained from the proof, and not from the claims of the contending parties. It is our opinion the proof shows a fair and *bona fide* offer to purchase the interest of Mildred S. Engelke in the unsold real estate. At that time the life tenant was living. Nobody could know how long she would live. The real estate market was not good; it was a gamble; and the sum offered was little less than fifty per cent of what it was worth were it ready to be sold at that moment. After the assignments and transfers had been made it was discovered that as a matter of law Mrs. Engelke had an interest in the $800,000 investments, as real estate, but she did not know this, nor did Stoltzner know it, when the transaction was closed. The proof clearly indicates the deal only involved the unsold land belonging to the estate of Chester Snell Coffin, deceased. The assignment improperly included all interest in such estate, because they were mistaken in the quality of said estate as between personalty and realty, and therefore the words used in the assignment included more than was mutually intended. It is always proper to identify the property referred to in a written conveyance, when it becomes an issue. *Weber* v. *Adler,* 311 Ill. 547; *Higinbotham* v. *Blair,* 308 Ill. 568; *Board of·Education* v. *City of Rockford,* 372 Ill. 442.

There can be no doubt about the intention of the parties, or the property they were discussing, or what they attempted to do and would have done except for their mistaken idea that the bonds and investments in which Chester Snell Coffin had an interest constituted personal property instead of real estate. This, however, does not prevent the contract from being enforcible as intended by the parties. The master in chancery has found that as so applied the transaction was enforcible, and the evidence shows that the master and the court should have limited the assignment to the property intended by the parties, in which event it was valid.

The evidence relating to the claim of Helen Stroh is almost identical with the evidence offered on behalf of Mildred S. Engelke, and therefore the same disposition will be made in her case as in the case of Mrs. Engelke.

This leaves for consideration the contention of Mildred S. Engelke that the assignment made by her mother, Grace Henrietta Coffin Love, should be set aside and vacated for a number of reasons. On February 3, 1932, Grace Henrietta Love (mother of Mildred S. Engelke) assigned to Henry Arthur Ingalls, in consideration of $3500, all right, title and interest which she had as heir-at-law, devisee and legatee of Chester Snell Coffin, or which her estate would possess at the time of her death. Chester Snell Coffin had been dead for a number of years, and, as pointed out previously in this opinion, had a vested interest under the will of Henrietta Snell, deceased. Grace Henrietta Love never questioned this assignment during her lifetime. The objections made by Mildred S. Engelke to the validity of this assignment were overruled by the master in chancery and by the superior court of Cook county, and are now contested by her in this court.

It is first claimed the assignment is void because of the spendthrift clause in the will of Henrietta Snell, de-

ceased, preventing Grace Henrietta Love from disposing of any of the *corpus* of the estate going to her. Mrs. Love did not acquire the particular interest assigned to Ingalls under the will of Henrietta Snell, deceased, but as heir-at-law of her deceased son, Chester Snell Coffin. As heretofore pointed out, the spendthrift provision in the will of Henrietta Snell, deceased, applies only to what Grace Henrietta Love took under the will, and not to what she inherited from another.

Mildred S. Engelke also claims the assignment to Ingalls was abrogated and canceled by a later assignment to one Loucks, but it does not appear that Ingalls was a party to the substitution, and without that his rights could not be affected by a subsequent assignment to a third person. A number of objections are made to the validity of the Loucks assignment, but inasmuch as it does not affect the validity of the Ingalls assignment it is unnecessary to discuss such objections in this opinion. There is no proof in the record of the cancellation or abrogation of the Ingalls assignment.

Then, again, it is contended the assignment to Henry Arthur Ingalls is testamentary in character without being executed with the formalities required in the making of wills. The assignment reads: "I hereby sell, assign, grant and convey * * * all of my right, title and interest * * * which I as an heir-at-law, legatee, devisee of Chester Snell Coffin * * * may be entitled to or which my estate will possess after my death." The test to be applied in determining this question is whether the grantor intended the document, by which the conveyance is made, to be presently operative or merely to be ambulatory in character, and revocable until the death of the grantor. (*Osgood* v. *McKee,* 343 Ill. 470; *Patterson* v. *McClenathan,* 296 Ill. 475.) It is obvious from the language used the assignment was presently operative.

The further contention that there was a failure to prove delivery of the assignment must be rejected in view of the presumption of delivery arising from the undisputed possession of such assignment by Henry Arthur Ingalls for a number of years. (*Patten* v. *Knowe*, 354 Ill. 156; *White* v. *Smith*, 338 Ill. 23.) So, also, the claim that Ingalls occupied a fiduciary relationship towards Grace Henrietta Love is not established merely by showing a loan of money, friendship or business transactions with her. To invalidate a transaction on this ground, the proof of such relationship must be clear, convincing, and so strong, unequivocal and unmistakable as to lead to but one conclusion. (*Dyblie* v. *Dyblie*, 389 Ill. 326.) The proof does not meet this test.

Mildred S. Engelke makes a number of other objections to the decree of the court on this branch of the case, which we have examined with care but find nothing in the record or briefs to sustain. There is no merit in the contention of Mrs. Engelke that the assignment made by her mother, Grace Henrietta Love, was invalid, and hence the decree of the circuit court upholding the title of the persons claiming under such assignment must be sustained.

After careful examination of the entire record, the decree of the superior court of Cook county is affirmed in all respects, except as to. the assignments of Mildred S. Engelke and Helen Stroh to Frode Stoltzner. The decree of the superior court in respect to the validity of the assignments to Frode Stoltzner is reversed and the cause remanded to the superior court of Cook county with directions to enter a decree in his favor, in accordance with the views expressed herein.

> *Affirmed in part and reversed in part*
> *and remanded, with directions.*