## Beyer Estate

*Wright, Spencer, Manning & Sagendorph,* for accountant.

*Wisler, Pearlstine, Talone & Gerber,* for beneficiary.

*Kirke Bryan,* for assignee.

TAXIS, P. J., April 27, 1966.—The first account of Continental Bank and Trust Company, formerly Montgomery County Bank and Trust Company, Norristown-Penn Trust Company and Norristown Trust Company, and Susan R. Beyer, testamentary trustees, as stated by Continental Bank and Trust Company, surviving trustee, was examined and audited by the court on February 7, 1966.

The account shows a principal balance for distribution of $47,763.70, composed of securities set forth on page 2 thereof, $26,201.24, and cash. There is an income balance of $720.86. The transfer inheritance tax has been paid.

The reason or purpose for the filing of the present account is the death of Susan R. Beyer, life tenant, on November 23, 1965. Certain problems have arisen relating to distribution and have been submitted to the court for determination here.

Decedent died April 26, 1948, leaving a will dated June 27, 1921. In the same, he created a trust of his residuary estate, to pay the first $5,000 per year income to his wife, Susan R. Beyer, the next $1,000 to his sister, Emma C. Beyer, with any balance to be equally divided between the two. Under this provision, all of the income of the trust has been paid to Susan R. Beyer.

Testator then directed that at the death of his wife,

the sum of $20,000 should be placed into a perpetual trust for the benefit of Trinity Reformed Church of Norristown, now known as Trinity United Church of Christ. This was followed by the following language:

"9. The remainder of my estate shall be held in trust by the Norristown Trust Company and one-half of the income thereof shall be paid to my sister, Emma C. Beyer, during her life, and the other half to my brother, William N. Beyer, during his life. If my sister die during the life of my brother, all income given to her under any provision of this will shall be paid to him during his life.

"10. Upon the death of my brother William at any time, all benefits to him under this will shall enure [sic] to the benefit of his daughter, Ruth H. Walt, during her life, and at her death for the benefit of her children, or issue, per stirpes, who may be surviving to the period of distribution, but shares of minors shall be held by my Trustee until they attain the age of twenty-one years. If any child, or issue of deceased child of my niece, should die before vesting of the principal of their shares, the income or principal otherwise payable to them shall enure [sic] to the increase of survivors.

"11. I specially provide that no portion of my estate, whether principal or income, shall be subject to attachment or other process whatsoever on account of indebtedness or liability of any beneficiary specified in my will, nor shall any benefit or share of principal or income given under this will be subject to assignment by any beneficiary".

William N. Beyer predeceased testator in 1937. Emma C. Beyer, his sister, died in 1961. On August 24, 1951, Emma C. Beyer entered the Aged Woman's Home of Montgomery County, Pa., and, in so doing, executed an assignment to it, the relevant language of which is as follows:

". . . I hereby assign, transfer and set over . . .

absolutely and unconditionally, all property, real, personal and mixed, now owned or which hereafter may be acquired by me, including all claims, pensions, annuities and insurance, . . ."

Emma C. Beyer lived at the home and was supported and maintained by it for the balance of her life, a period in excess of 10 years. It is agreed that upon entering the home, she turned over to it, in conformity to her assignment, all property which she then owned, which became the property of the home. On the basis of this assignment, the home claims whatever interest Emma C. Beyer has in this estate.

This claim is opposed by Ruth H. Walt, daughter of William N. Beyer, and decedent's niece. All parties agree that we are here and now faced with an intestacy as to one half of the principal of this estate, after deduction of the trust fund for Trinity United Church of Christ. This results from the provision in paragraph 10 of the will giving ". . . all benefits . . . under this will . . ." possessed by decedent's brother William to ". . . Ruth H. Walt, during her life . . ." which benefits (by paragraph 9) were a life estate in one half of the corpus. This is interpreted by all parties as the expression of an intent to confer a life estate upon Ruth H. Walt, and while this is not absolutely free of doubt, it is a reasonable interpretation and gives significance to the gift to Ruth H. Walt which it would be most difficult to do otherwise. Even this interpretation, however, cannot avoid an intestacy as to the other one half of the corpus, which now becomes distributable, its life tenants all being deceased.

All parties likewise agree that the will contains no general or residuary language applicable to the present situation. Certain language in paragraph 10 touches the problem of the descent of the share of principal now paying income to Ruth H. Walt, but this language is plainly confined to that share; there

is no indication that testator intended it to be a general residuary clause. Hence, section 14(10) of the Wills Act of April 24, 1947, P. L. 89, passing undisposed property "to the other residuary legatees", could never be applied here, whether or not Ruth H. Walt eventually leaves issue.

It follows, then, that one half of the trust is distributable, under the intestate laws, to testator's next of kin as of the date of his death. The result is that the estate of his widow, Susan R. Beyer, is entitled to the first $10,000 of principal plus one half of the balance, with the other one half of the balance going in equal shares to Ruth H. Walt and to the estate of Emma C. Beyer, deceased, or her assignee.

This leads to a consideration of the validity of the assignment by Emma C. Beyer to the Aged Woman's Home of Montgomery County. It should be noted preliminarily that this matter is properly in this court, for if the assignment is valid, the result is that the home becomes a *distributee* of this estate, and this court has exclusive jurisdiction over all matters of distribution: section 301(1), Orphans' Court Act of August 10, 1951, P. L. 1163. In opposition to the claim of the home, Ruth H. Walt contends that the interest of Emma C. Beyer herein was a mere expectancy not included in the assignment; that such an interest was not assignable at law at all, and only in equity when fairness absolutely required enforcement of such an assignment; and, finally, that paragraph 11 of testator's will, a spendthrift clause, prevents the assignment. We will deal with these contentions in the above order.

The arguments advanced concerning the assignability of expectancies are no doubt substantially correct, but are inapplicable to the present problem. The Intestate Act clearly conferred upon Emma C. Beyer an indefeasibly vested remainder in the undisposed of

principal of her brother's estate. This interest was fixed, certain and unvarying as of the date of decedent's death. While it could never vest *in possession*, it was fully vested in interest, and was by any reasonable definition "property . . . owned" by Emma C. Beyer. There was no condition, precedent or subsequent, which could diminish or extinguish this interest. At her death, had she still owned it, it would have been subject to inheritance taxes: Walton Estate, 409 Pa. 225. I hold, therefore, that the assignment by Emma C. Beyer to the home included her interest in this estate.

However, Ruth H. Walt claims further that Emma C. Beyer did not have the power to convey her interest in this estate, because of the spendthrift clause in paragraph 11 of the will. This argument, too, must be rejected. In the first place, it is doubtful that the language used by testator applies here. There is no attempt to "subject to attachment or other process", in the most usual sense of these words, any part of this estate; nor is the share of principal assigned ". . . given under this will . . .". Much more important, however, the restriction on alienation herein propounded by Ruth H. Walt would be inconsistent with the absolute ownership of the remainder interest which Emma C. Beyer had under the Intestate Act. As pointed out by counsel for the home, this matter appears to be one of first impression in Pennsylvania on its precise factual situation. A consideration of the basic principles surrounding the enforcement of spendthrift provisions, however, convinces me that there was not, and could not be, any restriction imposed on the assignability of Emma C. Beyer's vested remainder.

In Sproul-Bolton v. Sproul-Bolton, 383 Pa. 85, former Chief Justice Horace Stern said the following (p. 88):

"There is no question but that a spendthrift trust

may validly be created to protect from creditors and from alienation the income to be paid to a beneficiary during a period of life or years. Likewise there is no doubt but that the principal of such trust may be similarly safeguarded *during such period*, it being obvious that otherwise the payment of income to the beneficiary could not be assured. But there arises the question as to the exact time when the period of such protection terminates and beyond which it may not be validly extended. Thus, in the present case, did the immunity of the share of the principal payable to defendant automatically end when he became entitled to receive it upon attaining the age of thirty years, or did it extend until the time when it would be actually paid to him by the trustee?" (Italics supplied.)

The court pointed out that the issue before it was controlled by the expressed intention of the creator of the trust, and then discussed a number of leading cases. In Morgan's Estate (No. 1), 223 Pa. 228, it was held that where an income beneficiary had the right to terminate a trust and pay the principal as he should appoint, a spendthrift clause had no effect. In Hall's Estate, 248 Pa. 218, it was held that the principal in a spendthrift trust became attachable on the very day it became payable to the remainderman, even though the property was still in the hands of the trustees, for "There [was] nothing in the will . . . which indicat[ed] an intention [of the testator] to subject the principal to [a] spendthrift trust", nor any "provision for protection of the corpus . . . in transmission to the beneficiaries at the end of the trust. . . ." This was the issue involved in Sproul-Bolton v. Sproul-Bolton as well, and the court there held that there was no intent expressed therein to protect the corpus, so to speak, in transmission. Other cases were then cited wherein there had been such an expressed intent, all of which the court distinguished.

The importance here of this authority is that nowhere is it suggested that a spendthrift provision may be permanently imposed upon property owned absolutely by another. Spendthrift provisions are sustained because the law protects the donor's rights and interest in his own property, not because it is concerned with keeping the donee from wasting it: Morgan's Estate, supra. In all the myriad of cases involving valid spendthrift provisions, we did not find one where the spendthrift clause was other than a part of the entire plan of the trust, utilized by its creator to further his intended purpose. A condition preventing attachment, assignment or transfer of property otherwise owned absolutely is nothing but a bald restriction on alienation unenforceable either at law or in equity. See 14 P. L. Encyc., Estates in Property, §132.

In Ginsburg v. Hilsdorf, 13 Fiduc. Rep. 369, 380, it was held, citing Crowley v. Engelke, 394 Ill. 264, that ". . . There can be no spendthrift provisions as to him [the remainderman], because he takes possession when the trust ends, and certainly there is no rule which applies a spendthrift provision affecting the ancestor to a child who takes the remainder in fee . . ." The present case differs from the above only in that testator drew no distinction here between those who take principal and those who take income.

The conclusion that a spendthrift provision cannot extend to an interest such as that owned by Emma C. Beyer is reinforced by Restatement, Trusts 2d §153 (3), which states that if principal is not to be conveyed to a beneficiary during his lifetime, a restraint on either voluntary or involuntary transfer thereof by him is invalid. In comment (d) thereto, it is said, by way of explanation, that "A restraint on alienation is valid only if it affords protection to the beneficiary. Where the restraint merely operates to prevent him from disposing of the property on his death, it is not valid". It

is evident, therefore, that the home is entitled to receive in distribution the intestate share of Emma C. Beyer in this estate. . .

And now, April 27, 1966, this adjudication is confirmed nisi.