(No. 29845.

CHICAGO TITLE AND TRUST COMPANY *et al.*, Appellees, *vs.*
WALTER B. SHELLABERGER *et al.*—(MERCHANTS NA-
TIONAL BANK OF AURORA *et al.*, Appellants.)

*Opinion filed January 22, 1948—Rehearing denied March 11, 1948.*

ARTHUR A. SULLIVAN, of Chicago, and LATHAM CASTLE, and REID & OCHSENSCHLAGER, both of Aurora, (FRANK R. REID, JR., and ROBERT E. DOLPH, of counsel,) for appellant Merchants National Bank; SEARS & STREIT, of Chicago, (BARNABAS F. SEARS, EDWARD F. SEARS, and RALPH C. PUTNAM, JR., of counsel,) for appellant Rowena Potts.

ELI HERREN, GEORGE A. LANE, and OTTO BAER, guardians *ad litem*, OTTO C. RENTNER, HAROLD E. HANSON, S. R. PETERSON, ECKERT & PETERSON, WILSON & McILVAINE, and BELL, BOYD & MARSHALL, (THOMAS L. MARSHALL, WILLIAM B. McILVAINE, JR., and WALTER W. ROSS, JR., of counsel,) all of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

On June 28, 1946, the circuit court of Cook County construed a trust agreement executed by Edward F. Shellaberger and his wife, Rosa R. Shellaberger, on November 20, 1923, and two supplementary trusts created on January 2, 1932, and March 20, 1933. The Merchants National Bank of Aurora, as conservator of the estates of Edward F. and Rosa R. Shellaberger, prosecutes this appeal, a freehold being necessarily involved. Rosa R. Shellaberger died on January 3, 1946, while this cause was before the master in chancery. Edward F. Shellaberger died on February 13, 1947.

On November 20, 1923, Edward F. Shellaberger's family consisted of himself, his wife, his son, Walter B., his daughter, Jessie B. Vandegrift, Rose-Marie Shellaberger, a granddaughter (daughter of Walter B. and Evelyn Shellaberger), Robert I. and Byron E. Vandegrift, his grandsons, and Donna J. and Barbara P. Shellaberger, granddaughters (daughters of a deceased son).

The *corpus* of the trust consisted of beneficial interests under twenty-year land trust agreements covering three parcels of real estate, namely, the Telephone Square Building in Chicago, the building being leased to the Illinois Bell Telephone Company until 1947, a ranch in New Mexico known as the Placita Ranch, and vacant property in Chicago, sometimes described as the Wildwood property. The beneficiaries of the trust were the settlors, designated by the trust agreement as "Depositors" and who will

be referred to by this description, their son and daughter, daughter-in-law, five grandchildren and their attorney, Walter H. Eckert. Walter B. Shellaberger and Walter H. Eckert were named trustees. The Chicago Title and Trust Company was named as successor trustee. Eckert died on September 5, 1944. The first section of the agreement authorizes the trustees to invest the trust estate in income-paying real estate, bonds, and corporate shares; to lease any real estate held by them for any period or periods not exceeding 198 years, and to contract to sell, to sell on any terms, to convey with or without consideration, to mortgage, pledge or otherwise encumber the trust property with the improvements thereon or to be erected thereon, and, in general, "to deal with said premises and every part thereof in all other ways and for such other considerations as it would be lawful for any person owning the same to deal with the same, whether similar to or different from the ways above specified at any time or times hereafter." The second section provides that the depositors may from time to time in their discretion add to the trust estate, and include therein, any additional property, real, personal or mixed. Section three empowers the trustees (1) to pay out of the income derived from the property belonging to the trust estate all the necessary costs and expenses of the trust; (2) to make all payments of principal, interest or other sums falling due on any personal property or real estate owned, or purchased by, the trust; (3) to pay any other sums the trustees may deem necessary for the best interests of the trust estate, and (4) to set aside from the income of the trust such sums as may be deemed advisable for the purposes of paying in full or in part any mortgage indebtedness of the trust estate and establishing a reserve for depreciation of buildings forming a part of the trust estate. The remainder of the income of the trust, after the deductions described, is payable to the beneficiaries named in the agreement. It is further provided that the

principal of the reserve funds shall be applied from time to time by the trustees to the payment or reduction of mortgages of real estate or to the payment or reduction of mortgages of leasehold interests in real estate forming a part of the trust estate or to the restoration or rebuilding of buildings thereon or erected thereon. Reserve funds remaining unexpended at the termination of the trust are to be distributed in the same manner as if they constituted a part of the *corpus*. In addition, the trustees are given the right to set aside from time to time such amounts as deemed necessary for the proper handling and protection of the trust estate.

The balance of the income designated as "net income," the agreement provides, shall be distributed in designated percentages ranging from 26 per cent to each of the depositors and, in the event of the death of either, 52 per cent to the survivor, and, upon the death of both of the depositors, the 52 per cent to be paid as follows: 12/52 to Walter B. Shellaberger, 10/52 to Jessie B. Vandegrift, 4/52 each to Evelyn Shellaberger, Rose-Marie Shellaberger and Walter H. Eckert, and 6/52 each to Donna J. and Barbara P. Shellaberger, and 3/52 each to Robert I. and Byron E. Vandegrift. The clauses relating to the payment of net income to Walter B. Shellaberger and Walter H. Eckert out of the 52 per cent previously payable to the depositors declare: "Third: * * * III * * * A. Twelve fifty-seconds (12/52) thereof shall, until the time for the distribution of the principal of the trust estate hereunder, be paid to Walter B. Shellaberger, son of the Depositors for and during his natural life and upon his death to the lawful issue of Walter B. Shellaberger, share and share alike, *per stirpes* and not *per capita,* and in the event the said Walter B. Shellaberger leaves no issue him surviving, said Twelve fifty-seconds (12/52) of the income from the trust estate shall be paid to the heirs at law of the said Walter B. Shellaberger, according

to the laws of descent now in force in the State of Illinois. * * * E. Four fifty-seconds (4/52) thereof shall be paid to Walter H. Eckert, until the final distribution of the principal of the trust estate hereunder. In the event of his death at any time prior thereto, the same shall be paid to his heirs at law, according to the present laws of descent now in force in the State of Illinois." Like provisions are made with respect to the other beneficiaries.

Other portions of the third section of the trust agreement provide that 12 per cent of the net income is to be paid to Walter B. Shellaberger, 10 per cent to Jessie B. Vandegrift, 4 per cent to Evelyn Shellaberger, and 4 per cent to Walter H. Eckert. Provision is made for division of the remaining 18 per cent of the net income into five separate parts, three containing four per cent each and two parts, three per cent each, and payable by the trustees as the depositors, or the survivor, may direct, "with full power of the Depositors or either of them or of the survivors to revoke at any time, by instrument in writing delivered to the Trustees, this agreement and all powers herein granted and created, in so far and only and solely in so far as it relates for the payment of said eighteen per cent. (18%) of said 'net income' or any part thereof, and to alter and amend this agreement from time to time, but only and solely with reference to the payment of said Eighteen per cent. (18%) of said 'net income,' and to require said Trustees to convey, assign, transfer, set over and deliver to the said Depositors or the survivor of them such portion of said Eighteen per cent. (18%) of said 'net income' remaining in such form as it may exist at the time of said revocation." In the event the depositors fail to direct the trustees with reference to the payment of the "net income" from the 18 per cent, it is to be disposed of by payments of 4/18 each to Rose-Marie, Donna J. and Barbara P. Shellaberger, and 3/18 each to Robert I. and Byron E. Vandegrift.

Much of the present controversy centers around the fourth section of the trust agreement providing: "Fourth: Said Trustees shall hold the principal of said trust estate, after the death of the Depositors, until death of both, said Walter B. Shellaberger, and said Jessie B. Vandegrift, and in the event of the death of both of them before the time that the youngest grandchild of the Depositors now living shall arrive at the age of Twenty (20) years, then until such grandchild arrives at or would have arrived at said age of Twenty (20) years, whereupon the principal of said trust estate and all additions thereto, whether in the form of accumulated earnings or property turned over to said Trustees subsequent to this day, shall be distributed as follows:" 32 per cent to Rose-Marie Shellaberger, 16 per cent each to Robert I. and Byron E. Vandegrift, 8 per cent to Evelyn Shellaberger, 10 per cent each to Donna J. and Barbara P. Shellaberger, and 8 per cent to Walter H. Eckert. The provision in the fourth section for Eckert reads, "(7) Eight per cent. (8%) of said principal shall be paid to Walter H. Eckert, and in the event of his death, prior thereto, then to his heirs at law, according to the present laws of descent of the State of Illinois, share and share alike." The ninth section provides: "Ninth. Each of the Depositors, reserves unto himself or herself full power and authority at his or her option by an instrument in writing delivered to the Trustees to revoke this agreement and all powers herein granted and created in so far as it relates to the property designated in paragraph 'B' and described as: 'The rentals or income which they and each of them are entitled to receive under two certificates of beneficial interest issued by the said Chicago Title and Trust Company under said Trust Number 12610 above referred to, one of which is issued to each of the said Depositors,' and to alter or amend this agreement only in respect thereto from time to time and to require the Trustees to convey, assign, transfer, set over and deliver

to the said Depositors or the survivor of them, that portion of said part of the said trust estate then remaining, after deducting therefrom reasonable compensation of the Trustees."

On January 2, 1924, the depositors notified the trustees in writing, "We, and each of us do hereby waive our right to revoke the aforementioned trust agreement in so far as it relates to the property designated in paragraph 'B' * * *, and waive our right to alter or amend said agreement with reference thereto, and declare the same to be irrevocable on and after the date hereof."

On October 24, 1928, Edward F. and Rosa R. Shellaberger addressed the following communication to the trustees: "You are hereby notified that the undersigned have elected and do hereby elect and declare to make that portion of the aforesaid Trust Indenture set forth in paragraph 'Ninth' * * * irrevocable from and after the date hereof, and you are hereby directed to treat the same as being irrevocable by us and to treat said trust indenture as though said paragraph 'Ninth' had been eliminated from the agreement entirely." On the same day, October 24, 1928, the depositors notified the trustees of their election to make the portion of the trust indenture set forth in paragraph VIII of the third section relating to the 18 per cent of the net income from the trust estate, irrevocable from and after the day named, and to treat it as being irrevocable by the depositors.

On January 2, 1932, by an instrument captioned "Schedule of Property of the Edward F. and Rosa R. Shellaberger Trust," Shellaberger conveyed to his son, Walter B. Shellaberger, and Walter H. Eckert, as trustees, under the terms and provisions of the original trust agreement of November 20, 1923, two notes of the Edward F. and Rosa R. Shellaberger trust for $100,000 and $8000, respectively, and one note, dated August 1, 1929, for $23,260, all payable to the order of Edward F. Shellaberger. The schedule

of January 2, 1932, recites that the three notes are delivered to the trustees with the understanding they shall be held pursuant to the provisions of the trust of November 20, 1923, but with the understanding that the income therefrom, and the principal, shall be disposed of as specifically set forth, namely, $75 per month, commencing with the month of March, 1932, to Mrs. L. L. Grigsby, sister of Edward F. Shellaberger, and the remaining income to himself and, in the event of his death prior to his wife, then to her and, upon the death of both himself and his wife, 34 per cent of the income shall, until distribution of the principal, be paid to Barbara P. and Donna J. Shellaberger each, and 32 per cent to Walter H. Eckert. The termination clause reads, in part, "4. Upon the death of Edward F. Shellaberger, Rosa R. Shellaberger, Walter B. Shellaberger, and the depositor's daughter, Jessie B. Vandegrift, the said notes or the proceeds thereof, or other securities or property into which they may have been converted, shall be distributed as follows," 34 per cent each to Barbara P. and Donna J. Shellaberger and 32 per cent to Walter H. Eckert.

On March 20, 1933, by another instrument captioned, "Schedule of Property of the Edward F. and Rosa R. Shellaberger Trust," Edward F. Shellaberger conveyed to Walter B. Shellaberger and Walter H. Eckert, as trustees, a note executed by the trustees of the Edward F. and Rosa R. Shellaberger trust, and not individually, dated March 3, 1933, for $25,000, payable to the order of Edward F. Shellaberger. This schedule also states that the note is delivered to the trustees with the understanding it shall be held pursuant to the provisions of the original trust. The only difference in the disposition of income and principal from the provisions in the schedule of January 2, 1932, is the omission of Shellaberger's sister as a recipient of income.

Other instruments requiring mention include a state-

ment signed by Edward F. Shellaberger and his wife by himself as her attorney in fact, dated May 15, 1945, addressed to Walter B. Shellaberger, sole surviving trustee under the Shellaberger trust, of November 20, 1923, directing him to pay to Edward F. and Rosa R. Shellaberger all further sums collected and to make no further payments to the estate of Walter H. Eckert, deceased, or to any person to whom Eckert may have directed payments be made. Another communication signed by the depositors in the same manner, dated May 1, 1945, addressed to their son, as sole surviving trustee, directed him to immediately convey, assign, transfer, set over and deliver to them all the rentals or income which they, and each of them, were entitled to receive under two certificates of beneficial interest issued by the Chicago Title and Trust Company under its trust No. 12610, and held by the trustee under the Shellaberger trust of November 20, 1923, adding, "Any provisions in the original trust instrument to the contrary and any provisions in any directions heretofore given you to the contrary are hereby altered, amended and revoked to conform to the direction set forth above. You are further directed to immediately assign and deliver said certificates of beneficial interest to the undersigned." A third communication to their son, as sole surviving trustee, dated May 1, 1945, directed him to immediately commence paying to them the remaining 18 per cent of the net income from the trust estate referred to in the third section, paragraph VIII, of the trust instrument, and to continue to pay to them until further directions.

July 6, 1945, the Chicago Title and Trust Company, as successor trustee, filed its complaint in the circuit court of Cook County seeking a construction of the trust agreement of November 20, 1923, and the two documents executed by Edward F. Shellaberger on January 2, 1932, and March 20, 1933. The surviving cotrustee and all beneficiaries were made defendants. By appropriate pleadings, the questions,

among others, were presented for decision: (1) Whether the trust agreement of November 20, 1923, violates the rule against perpetuities; (2) Whether this agreement was subject to revocation, amendment or change after October 24, 1928; (3) Did the documents of January 2, 1932, and March 20, 1933, depositing four notes with the trustees add these notes to the original trust or create new and independent trusts; (4) Who are the beneficiaries under the trust or trusts; (5) Are the trusts revocable or irrevocable; (6) Who, if anyone, is entitled to receive the share of Walter H. Eckert, deceased, under the trusts; (7) Are the report and accounts submitted by the trustees in this litigation proper and correct, and (8) Were the depositors, Edward F. and Rosa R. Shellaberger, competent or incompetent in 1945? On November 19, 1945, the cause was referred to a master in chancery who heard considerable evidence, as is apparent from the exhaustive record of 1705 pages. The master, in his report, found unnecessary, for the purposes of this litigation, to decide the question of the sanity or insanity of the two depositors. Objections to the master's report were ordered to stand as exceptions. The chancellor overruled the exceptions and approved the report in all substantial respects.

In the meantime, on September 19, 1945, Rosa R. Shellaberger was adjudged an incompetent by the county court of DeKalb County and the Merchants National Bank of Aurora appointed conservator of her estate. On October 22, 1945, Rowena Potts, housekeeper and nurse for Edward F. Shellaberger during his last years, filed a petition in the county court of DeKalb County seeking the appointment of a conservator for him and, four days later, the same bank was named conservator of his estate. We note, in passing, the evidence discloses that, on December 18, 1945, Edward F. Shellaberger was ninety-three years of age.

By the will of Edward F. Shellaberger, executed De-

cember 19, 1943, he devised and bequeathed the property occupied as a homestead, together with all of the household furnishings located in the house, in the event his wife predeceased him, to Rowena Potts, absolutely. He also devised and bequeathed to Rowena Potts the residue of his estate, and named her executrix of his will.

The decree entered by the circuit court on June 28, 1946, so far as relevant, found the trust created November 20, 1923, valid and subsisting; that the instrument executed by the depositors and delivered to the trustees on January 2, 1924, had the effect of releasing their power to revoke, amend or alter the trust agreement to the extent it related to 52 per cent of the rentals or income they were entitled to receive under two certificates of beneficial interest issued by the Chicago Title and Trust Company under its land trust No. 12610, and that an instrument, dated October 24, 1928, executed and delivered by the depositors, had the effect of releasing their power to revoke, alter, or amend the trust agreement with respect to the portion of the third section relating to the disposition of 18 per cent of the net income, and that, with the release of the powers of revocation, alteration, and amendment, the trust agreement became, and is now, irrevocable and not subject to change in any manner. The chancellor approved the finding of the master that the trustees had properly administered the trust estate and had fully accounted for all receipts and disbursements from the inception of the trust to the day this action was instituted. The persons entitled to the distribution of net income of the trust estate, during its existence after the death of Edward F. and Rosa R. Shellaberger, and the amounts of net income to which each became entitled were adjudged to be: Walter B. Shellaberger, 24 per cent; Jessie B. Vandegrift, 20 per cent; Evelyn and Rose-Marie Shellaberger and the heirs of Walter H. Eckert, 8 per cent each; Donna J. Shellaberger Stein and Barbara P. Shellaberger Coonrad,

10 per cent each; Robert I. and Byron E. Vandegrift, 6 per cent each. The decree directed that, Walter H. Eckert having died, the eight per cent distributable upon the death of Edward F. Shellaberger be paid to Eckert's heirs-at-law, determined as of the date of his death and in accordance with the statutes of this State governing heirship on November 20, 1923. The decree adjudged, further, that, upon the death of the survivor of Edward F. and Walter B. Shellaberger and Jessie B. Vandegrift, all of whom were then living, the trust estate would terminate and the entire *corpus* of the trust become distributable, it appearing that the youngest grandchild of Edward F. Shellaberger who was living on November 20, 1923, had already attained the age of twenty years. The principal of the trust estate thereupon distributable was set forth in the following proportions: Rose-Marie Shellaberger, 32 per cent; Robert I. and Byron E. Vandegrift, 16 per cent each; Donna J. Shellaberger Stein and Barbara Shellaberger Coonrad, 10 per cent each, and Evelyn Shellaberger and the heirs of Walter H. Eckert, 8 per cent each. The decree also stated the respective interests of the beneficiaries under the instruments dated January 2, 1932, and March 20, 1933. The decree found that the trusts created by Edward F. Shellaberger on January 2, 1932, and March 20, 1933, were and are irrevocable and not subject to change in any way. References having been made in the three trust instruments to the heirs-at-law of various beneficiaries who are to receive distributions of income and principal upon the death of certain named beneficiaries, the trustees, in each instance, were instructed that the heirs-at-law of such person or persons shall be ascertained at the death of such persons. The decree concludes, "None of the Trusts hereinabove described violates the Rule Against Perpetuities."

The appellant, the Merchants National Bank of Aurora, as conservator of the estates of Edward F. and Rosa R.

Shellaberger, and Rowena Potts, executrix and devisee of Edward F. Shellaberger's will, an additional party appellant, assail the trust of November 20, 1923, upon the ground that it violates the rule against perpetuities. The conservator maintains that there are contingent interests in both the income (the life interests) and the principal (the remainder) of the Shellaberger trust. To sustain the decree, the appellees, the guardians *ad litem* for Edward F. Shellaberger and Rosa R. Shellaberger, the guardian *ad litem* for the minor great-grandchildren of the depositors, Jessie B. Vandegrift, four of the five grandchildren of the depositors, Georgia J. Eckert, individually and as executrix of the will of Walter H. Eckert, deceased, Jane Eckert Dawson, and the trustees, Walter B. Shellaberger and the Chicago Title and Trust Company, maintain that the fourth section of the original trust agreement clearly means, as the decree adjudged, that the trust shall terminate upon the death of the survivor of the four named persons, Edward F. Shellaberger, Rosa R. Shellaberger, Walter B. Shellaberger and Jessie B. Vandegrift, the youngest grandchild living on November 20, 1923, already being over twenty years of age.

Professor Gray's classic definition of the rule against perpetuities is that "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." (Gray, Rule Against Perpetuities, 2d ed., sec. 201; *Corwin* v. *Rheims,* 390 Ill. 205.) If by any possibility the interest does not vest within this time, it comes within the rule, and the estate attempted to be created must fail. (*Thomas* v. *Pullman Trust & Savings Bank,* 371 Ill. 577; *Aldendifer* v. *Wylie,* 306 Ill. 426.) The contingency may be postponed for any number of lives, provided they are all in being when the contingent interest is created, and the persons whose lives are taken need have no interest in the estate. (Gray, Rule Against Perpetuities, 2d ed., sec. 216; Kales

on Future Interests, 2d ed., sec. 119; *Wills* v. *Southwell*, 334 Ill. 448; *Carlberg* v. *State Savings Bank and Trust Co.* 312 Ill. 181; *Madison* v. *Larmon*, 170 Ill. 65; *Hale* v. *Hale*, 125 Ill. 399.) The rule does not apply to vested interests, and the postponement of enjoyment or possession does not bring the interests within the rule. (*Fleshner* v. *Fleshner*, 378 Ill. 536; *Wills* v. *Southwell*, 334 Ill. 448.) Since the rule does not apply to vested interests, the determination of whether the beneficiaries named in the challenged trust agreements took vested remainders becomes of paramount importance. A vested remainder is one which throughout its continuance gives to the remainderman or his heirs the right to immediate possession whenever and however the preceding estate may determine. (*Crowley* v. *Engelke*, 394 Ill. 264; *Murphy* v. *Westhoff*, 386 Ill. 136.) Immediate vesting is indicated when the postponement of enjoyment is merely because another estate precedes and where the postponement of enjoyment is for the convenience of the property and not because of reasons personal to the beneficiary. (*Martin* v. *McCune*, 318 Ill. 585; *Armstrong* v. *Barber*, 239 Ill. 389.) The law, of course, favors the vesting of estates at the earliest possible moment. *Fay* v. *Fay*, 336 Ill. 299.

To support their contention that there are contingent interests in both the income and principal of the Shellaberger trust which violate the rule, our attention is directed to the interest of Walter H. Eckert, as illustrative. The provisions of the trust agreement creating his interest in both principal and income are substantially the same as those for the other beneficiaries. Eckert died in 1944, twenty-one years after the trust was created, leaving as his only heirs-at-law his wife and their daughter. The conservator asserts, "As to his share, his death was the end of the life in being when the Estate was created. However, if Jane [Eckert's daughter] has a child, X, and then dies, Georgia [Eckert's wife] dies, and in 1966, the

survivor of Edward, Rosa, Walter and Jessie dies, and the time for distribution of the principal arrives, Walter's share of the principal will vest in the grandchild, X, beyond the period embodied in the rule. It would vest more than twenty-one years after Walter's death, and as to his share, Walter's death was the end of *the life in being,* when the interest was created." The trust agreement, as recounted, provides that eight per cent of the principal shall be paid to Eckert, and, in the event of his death prior thereto, then to his heirs-at-law, according to the laws of descent of the State of Illinois in force in 1923, share and share alike. If the words "his heirs-at-law" be deemed words of limitation, the entire interest vested upon the creation of the trust. On the other hand, if considered words of purchase, the interest of the heirs-at-law would normally vest at the death of Eckert. The mere fact that Eckert's grandchildren might be the first persons to take possession is immaterial, for the reason that Eckert, himself, or his heirs-at-law were ready at any time on and after November 20, 1923, to take immediate possession of the interest created for them whenever and however the preceding estates should determine. A vested remainder was created. The words employed by the depositors, "in the event of his death, prior thereto, [time of distribution] then to his heirs at law," obviously refer to the time of enjoyment and not to the time of vesting. (*Crowley* v. *Engelke,* 394 Ill. 264; *Fleshner* v. *Fleshner,* 378 Ill. 536; *Fay* v. *Fay,* 336 Ill. 299.) With respect to the words, "heirs-at-law," a strong presumption obtains that these words shall receive their technical meaning to include all who would take an intestate estate. (*Noe* v. *Moseley,* 377 Ill. 152; *Carpenter* v. *Hubbard,* 263 Ill. 571.) The same heirs-at-law of Eckert are the present beneficiaries of income under the third section as of principal under the fourth section. Again, they are described in the same manner as in the previous provisions of the agreement. These several refer-

ences to Eckert and his heirs-at-law are to the same persons and, without question, the heirs-at-law of Eckert who, since Edward F. Shellaberger's death in 1947, will now receive eight per cent of the income are the same heirs-at-law who, it is provided, shall receive eight per cent of the *corpus*.

Referring to the provision for distribution of ten per cent of the principal to Donna J. and Barbara P. Shellaberger, granddaughters of the depositors, the conservator states another example of an alleged violation of the rule. It is said, "Suppose that shortly after the Trust is created, Donna dies, leaving no children her surviving, then Barbara dies. Suppose, also, that twenty-two years after Donna's death either Walter or Jessie has a child, X, (a grandchild of the Depositors.) Then, Edward, Rosa, Walter and Jessie die, and the time for distribution arrives. Part of Donna's share of the property will vest in X, one of the grandchildren who was born more than twenty-one years after Donna's death, the only life in being which can be considered, as far as Donna's 10% is concerned." The quoted statement is fallacious. If Donna dies leaving no children surviving and is also predeceased by Barbara, her interest vests at once in the remaining grandchildren of the depositors. The vesting of the remainder in the other grandchildren or to anyone else is not postponed beyond the time of Donna's death. Enjoyment may be postponed but not the vesting of Donna's interest. A gift to grandchildren is a gift to a class which vests even though subject to be opened to admit after-born members. *Corwin* v. *Rheims,* 390 Ill. 205; *First Nat. Bank* v. *McIntosh,* 366 Ill. 436; *McKibben* v. *Pioneer Trust & Savings Bank,* 365 Ill. 369.

One of the appellants, Rowena Potts, contends that the trust does not dispose of the *corpus* in all contingencies and, in particular, the contingency in the event the death of the depositors follows the death of Walter B. Shella-

berger and Jessie B. Vandegrift. In short, her contention
is that if Walter B. Shellaberger and his sister, Jessie B.
Vandegrift, had predeceased their father and mother, the
depositors, there would have been no disposition of the
*corpus* as far as their shares were concerned. From this
said appellant says, "Therefore, for rule purposes, we have
a trust which does not dispose of the *corpus* at all, as
possible, not probable or actual events must be considered.
In effect, then, we have a trust without a termination
clause, which appellees specifically admit violates the rule."
To sustain this contention, she has recourse to the fourth
section of the trust agreement and argues that the only
contingency indicated is the death of the depositors prior
to the death of their children, Walter and Jessie, and that
the reverse sequence is not indicated. This section com-
mences: "Fourth: Said Trustees shall hold the principal
of said trust estate, after the death of the Depositors, until
the death of both, said Walter B. Shellaberger, and said
Jessie B. Vandegrift." It is urged that the stated order
of deaths must be considered in connection with the word
"after" and the subsequent word "until," and that, giving
effect to these two words, they impart a definite meaning
to the stated order of deaths. Rowena Potts also directs
attention to another part of the fourth section, "and in the
event of the death of both of them before the time that
the youngest grandchild of the Depositors now living shall
arrive at the age of Twenty (20) years, then until such
grandchild arrives at or would have arrived at said age
of Twenty (20) years." The fourth section continues,
"whereupon the principal  *  *  *  shall be distributed."
The gist of her argument is that the quoted language in-
troduces a new element in time of distribution of the *corpus*
of the trust, namely, the twentieth anniversary of the
youngest living grandchild, an element not related to the
death of the depositors but to the death of Walter and
Jessie.

The arguments advanced are technical in the extreme. The manifest intent expressed by the plain language of the fourth section of the trust agreement is that, after the death of the original depositors, the trustees are to make distribution of the income, as provided, until the death of both Walter B. Shellaberger and Jessie B. Vandegrift and, further, until the youngest grandchild of the depositors who is living on November 20, 1923, attains the age of twenty years, and that when these two contingencies occur, the *corpus* of the trust is to be distributed as directed and, further, that the heirs-at-law of the named beneficiaries are to be determined as of the day of the death of the respective beneficiaries and not the day of distribution. The manner of describing the contingency of deaths of persons in two successive generations, one generation consisting of the depositors and the other of their two children, is natural and customary. This being so, the language of the fourth section is a clear direction to the trustees to hold the principal after the death of the two of the first generation until the death of the two of the second generation. The use of the word "whereupon" is itself a sufficient answer to the technical and strained construction urged by appellant Potts. The direction, "After the death of the depositors" means that the distribution was not to take place upon the death of the survivor of the two depositors but is, instead, to await the death of their children. The language employed, far from being ambiguous, is remarkably clear and affords a certain and definite termination of the trust and a description of the beneficiaries who shall receive the *corpus*. Our conclusion is fortified by the fact that, in each of the 18 paragraphs disposing of income, substantially the same limitation is placed upon the payment of income. The respective provisions relating to the disposition of principal and the payment of income disclose an intention to fix a definite and certain termination date. Nor does the omission of

the words "after" and "until" in the termination clauses of the trust instruments of January 2, 1932, and March 20, 1933, indicate a different intention. The three trusts follow the same pattern, and were intended to and will terminate at the same time.

Appellant Potts contends, further, in construing the gifts of income to the lawful issue of Walter B. Shellaberger and Jessie B. Vandegrift, and the gifts over to their heirs upon failure of issue, the word "issue" must be given its legal meaning, the instrument being a deed, and there being nothing in the instrument to exclude the *prima facie* interpretation of the term; irrespective of whether the fourth section, the termination clause, applies. Paragraph III.A of the third section is attacked. This portion of the trust agreement provides, first, that 12/52 of the income shall, "until the time for the distribution of the principal of the trust estate hereunder," be paid to Walter B. Shellaberger during his lifetime and upon his death to his "lawful issue," share and share alike, per *stirpes* and not *per capita,* "and in the event the said Walter B. Shellaberger leaves no issue him surviving," the 12/52 shall be paid to his heirs-at-law, according to the laws of descent in force in Illinois on November 20, 1923. The point made is that the gifts of income to the lawful issue of Walter (and likewise Jessie) must, in the event the death of the depositors follows the death of Walter and Jessie, be construed as gifts to their descendants as successive purchasers in indefinite succession from generation to generation; that the gifts of income over to the heirs of Walter and Jessie must, in such contingency, be deemed gifts to take effect upon indefinite failure of their issue, and that "those gifts to issue and gifts over to heirs may not, in the contingency supposed, take effect within the prescribed period" and therefore violate the rule against perpetuities. This contention ignores the words, "in the event the said Walter B. Shellaberger leaves no issue him surviving."

Upon Walter Shellaberger's death, the remainder in the income will go to such of his lawful issue, *per stirpes,* as shall survive him, and if none survive him, then to his heirs-at-law. "A definite failure of issue is, when a precise time is fixed by the will for the failure of issue, as in the case of a devise to A, but if he dies without issue living at the time of his death, then to another. . An indefinite failure of issue means a failure of issue whenever it may happen, without fixing any time, or a certain and definite period within which it must happen." (*Smith* v. *Kimbell,* 153 Ill. 368. See: *Robeson* v. *Cochran,* 255 Ill. 355; *Metzen* v. *Schopp,* 202 Ill. 275.) The quoted words ignored by said appellant impel the conclusion that a definite rather than an indefinite failure of issue was intended and provided. The time for the determination of the subsequent takers is definitely fixed as the date of Walter B. Shellaberger's death. When it is certain that his heirs-at-law will take upon the day of his death "in the event the said Walter B. Shellaberger leaves no issue him surviving," it follows that the lawful issue who will take will only be those living upon the day he dies.

Disposition of this appeal requires a consideration of *Corwin* v. *Rheims,* 390 Ill. 205. Both appellants have proceeded on the assumption that the *Corwin case* is decisive of their contentions with respect to the rule against perpetuities rendering the trusts void. Reliance is placed upon law review articles (34 Illinois Bar Journal 21; 13 University of Chicago Law Review 300, 313; 40 Illinois Law Review 404,) to the effect *Corwin* v. *Rheims* lays down a new rule that the life in being upon which the particular interest is founded must be the life, and only the life, of the first taker of the interest. Applying this thesis, the conservator states that here, "in determining whether Walter Eckert's share vests within the rule against perpetuities, you may take only Walter Eckert's life as the 'life in being'." The assumption is unwarranted. In

the case cited, a trust instrument executed by Mary E. Hanley conveyed to a trustee property, subject to a ninety-nine-year lease extending from November 2, 1885, to November 2, 1984. The trust agreement provided for payment of the net income in equal shares to the settlor's three children. It provided, further, that if any child should die leaving lawful issue, the share of the deceased child should go to such lawful issue in equal shares and if any child should die without lawful issue, then such share should go to the surviving children of the settlor. Another provision was that "In the event of the death of all three of said beneficiaries, then the income of said property is to be divided equally among the legal heirs of said beneficiaries by said trustee or his successor." We held that the estates created in and payable out of the income violated the rule against perpetuities, pointing out that the gift of net income to the three children was a gift to them individually and not as a class; that the condition, if a child should die leaving lawful issue the share of the deceased child should go to such issue, and the gift over to the survivor of the three in the event any one of them died without lawful issue, were indicative of an intent to dispose of each one-third on a distinct basis; that the estate to the settlor's three children was a life estate; that the estates to the lawful issue of a deceased child and the gift over to the survivors, if there was no lawful issue, were also life estates limited to them and during the life of the survivor of the children; that, after the death of the survivor, each one-third was payable to the legal heirs of the three children; that it was conceivable a person or persons who were lawful issue of one of the children at the time of his or her death might be a "legal heir" at the death of the survivor, but that it was also possible one who was a "legal heir" at the death of the survivor was not a lawful issue; that the intent of the settlor, judged from circumstances attending the execution of the

trust and the language employed in the trust instrument, was to depart from the usual rule of determining the legal heirs of a person at death and, as to the two who died first, to postpone the time for determining heirship until the death of the survivors of the three, and that it was possible a person qualifying as a legal heir at the death of the survivor was born more than twenty-one years after the death of life or lives in being when the trust was created. In short, the ultimate remainder was a remainder in income to the heirs of the three children of the settlor subject to numerous contingencies which could not be resolved until the time for commencement of enjoyment of the interest, and its disposition violated the rule. (*Bigelow* v. *Cady,* 171 Ill. 229.) As we observed in the *Corwin* case, "It is clear that the estate in the income which would vest in the legal heirs of the survivor would not be within the rule against perpetuities, but the situation is different as to the legal heirs of the other two. As to the two who died first, their legal heirs were not determinable until the survivor of the three children died." The trust instrument in the *Corwin case* contained no termination clause and no provision for distribution of the *corpus.* In the case at bar, each of the three trust instruments contains a termination clause making a clear disposition of the *corpus. Corwin* v. *Rheims* does not support the contentions of either appellant, and is not open to the construction urged by either of them.

Reference is made to the power of the trustees to make leases for 198 years. Appellants concede that this provision does not mean the trust must last this long, but maintain it shows the intention of the depositors to tie up the property in trust for a long period of time. The trust will terminate in due course subject to any lease or leases and any sale or sales.

A reference to the "present laws of descent" now in force in this State, it is stated, shows that the interest was

not vested upon the execution of the trust instrument. The language indicates a desire to settle definitely, within a reasonable period of time, the disposition of the property placed in trust upon the basis of the law in effect in 1923. In *Geiger* v. *Geer,* 395 Ill. 367, the words, "shall descend in remainder in accordance with the laws of descent then [at the time of distribution] in force in this State" indicated an intention to postpone the determination of the heirs-at-law of the beneficiaries to the time of distribution. Conversely, the words "present laws of descent now in force" refer to vesting at the time of the creation of the trust.

Apparently realizing the weakness of its position, the conservator asks this court to shorten the time allowed for vesting of estates, observing "There is nothing to prevent the Supreme Court from laying down any rule, whether in accord with the old common law rule or opposed to it, particularly when the principles behind the rule are furthered and strengthened." It is not within the province of this court to disturb long-established rules of real-property law. The People and the bar of this State are entitled to place reliance upon our decisions with assurance that they will not be overruled from term to term and to know that this court does not assume to arrogate to itself legislative powers.

The contention that invalid trusts were created on January 2, 1932, and March 20, 1933, is without merit. To support the contention relative to the asserted invalidity of these two trusts, appellants say that a person cannot be trustee of a note made by himself. On the two dates named, Edward F. Shellaberger, individually, executed instruments conveying to the trustees named in the trust of November 20, 1923, promissory notes previously executed by the trustees and delivered to him in payment for sums advanced for taxes, interest and principal of mortgage indebtedness against real estate owned by the original trust.

Although the instruments of January 2, 1932, and March 20, 1933, were each captioned "Schedule of Property of Edward F. and Rosa R. Shellaberger Trust," they designated new beneficiaries of both principal and income and, in consequence, constituted new trusts. The notes placed in the new trusts were notes of the original trust created on November 20, 1923, and payable solely out of the assets of the first trust. They became the equitable property of the new beneficiaries of the second and third trusts,—beneficiaries who were not the same as those under the original trust. The notes specifically state that the trustees incurred no personal liability, the notes being signed "not in their individual capacities but solely as trustees of the Edward F. Shellaberger and Rosa R. Shellaberger Trust," and payable "only out of trust funds available in said trust estate." (See: *Schumann-Heink* v. *Folsom,* 328 Ill. 321.) Under the Negotiable Instruments Act, a negotiable instrument is discharged when the principal debtor becomes the holder of the instrument at or after maturity in his own right. (Ill. Rev. Stat. 1947, chap. 98, par. 140(4).) Here, the principal debtor, the trust estate, did not become the holder of the instrument at or after maturity in its own right. The proposition that a person cannot be trustee of a note made by himself does not apply to notes of a trust held by the trustees, as here, in trust for different beneficiaries. The decree correctly so found.

The trust agreement of November 20, 1923, provided for a distribution of 82 per cent of the "net income." It is next contended that the remaining 18 per cent of the "net income" should have been paid to Edward F. Shellaberger following the death of his wife, Rosa. After the latter's death, Shellaberger received 52 per cent of the income from the trust of November 20, 1923, and, with the exception of $75 per month payable to his sister, Mrs. Grigsby, all of the income from the two later trusts. Under the original trust, the disposition of 18 per cent of the

income was to be effective only in the event of no other disposition. By the ninth section of the trust agreement, the depositors, so far as the 18 per cent of the "net income" is involved, reserved full power and authority to revoke the agreement and to alter or amend it from time to time. On October 24, 1928, the depositors relinquished the power and authority to revoke by two separate instruments. Of these, the first instrument, dated October 24, 1928, made the dispositions of the income from the telephone building irrevocable. The second instrument made irrevocable the disposition of the 18 per cent of the "net income." The conservator asserts that the power to revoke and the power to amend or modify are distinct powers. The two documents executed on October 24, 1928, made the dispositions of the trust agreement irrevocable, and this having been done, these provisions were thereafter not subject to alteration or amendment. One obvious purpose of these documents was to avoid Federal taxation. At a time when there was no Federal gift tax, the disposition of the property placed in trust was made irrevocable. One legitimate object sought to be attained was to reduce, if not completely avoid, Federal estate taxes upon the death of the depositors. Without going into detail, it suffices to note that this purpose was apparently accomplished. The provisions of the trust having been made irrevocable, it follows, necessarily, that the three instruments executed by the depositors in May, 1945, purporting to exercise power and authority were ineffective.

Appellants complain, finally, that the trust of November 20, 1923, has not been administered according to its terms, saying that the depositors did not receive the share of the net income to which they were entitled; that the trust has been administered in the interest of the remaindermen to the detriment of those entitled only to income, and "An arbitrary amount has been distributed each year." The trust agreement is specific with respect to determining

what constitutes net income. The trustees were directed to pay out of gross income or hold in reserve necessary funds to pay off obligations of the trust and establish proper reserves to protect the *corpus*. Appellants charge that the trustees purchased, without authority under the trust instrument, the outstanding one-fourth interest in the Wildwood property, a tract of vacant commercial property on the south side of Chicago; that taxes on this property in considerable amounts were paid out of income; that special assessments on this property have been paid out of income; that a substantial sum of money was spent for legal, title and abstracting fees and charged against income; that trustees' expenses and fees are not properly itemized; that insurance premiums were charged entirely against income, and that these and other expenditures should all be surcharged against the trustees. Specifically, the conservator says that, during the period from November 30, 1923, to December 31, 1944, the trustees used $476,774.30 of the net income for principal disbursements, including payments on the mortgage indebtedness. A large part of this item represented principal payments on a mortgage indebtedness on the Telephone Square Building. This property was subject to a mortgage debt of $850,000 when acquired by the trustees in 1923. The net result of payments on the principal debt and the payment of sums advanced by the depositors, individually, is that the mortgage debt has been reduced to $140,000. Under the trust agreement, the trustees were granted discretion as to the sum deemed advisable to be paid on account of the mortgage indebtness or set up in a reserve. Apart from this, the beneficiaries approved the amounts of income so distributed, as disclosed by a letter dated December 10, 1928, signed by Edward F. and Rosa R. Shellaberger, and another on March 31, 1944, signed by Shellaberger, individually, and as attorney-in-fact for his wife. Both letters were addressed to the two trustees. Generally, a bene-

ficiary cannot hold a trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary, prior to or at the time of the act or omission, consented to it. (Restatement of the Law of Trusts, sec. 216.) The trust instrument of November 20, 1923, granted ample authority to the trustees to make the expenditures represented by the other challenged items. All questions concerning the accounting have been thoroughly examined, and we concur in the approval of the accounting by the master and the chancellor.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*